**Emile and Marjorie Paquette**

v.

**Deere and Company and Oshkosh Truck Corporation**

[719 A.2d 410]

No. 97-389

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed September 4, 1998

*David M. Klein* of *Bauer, Anderson and Gravel*, Burlington, for Plaintiffs-Appellants.

*Thomas P. Simm* of *McCormick, Fitzpatrick, Kasper and Burchard, P.C.*, Burlington, for Defendants-Appellees.

**Johnson, J.** Plaintiffs appeal the superior court's order dismissing their suit seeking compensation for economic losses incurred when they traded in their allegedly defective motor home. We conclude that plaintiffs' warranty claims were not brought within the relevant limitations period, and that their products liability claims could not be based upon the purely economic losses incurred in this particular case. Accordingly, we affirm the superior court's judgment.

Because judgment was granted on the pleadings in this case, we accept as true all well pleaded factual allegations contained in the

complaint and all reasonable inferences that can be drawn from those allegations. See *Thayer v. Herdt*, 155 Vt. 448, 456, 586 A.2d 1122, 1126 (1990). According to their complaint, plaintiffs purchased a new John Deere Superchief Winnebago on August 2, 1989 for $64,000. Beginning in 1990, plaintiffs began experiencing problems with the motor home resulting from defective electrical wiring. The engine would cut out and stall, which in turn affected the performance of the brakes. Plaintiffs made several attempts to repair the vehicle, but the problems recurred. On September 23, 1994, plaintiffs were involved in an accident as a result of these problems.

Approximately one month after the accident, plaintiffs received a recall notice, dated September 6, 1994, which warned of electrical problems that could result in engine stalling and partial brake failure. The notice asked owners who were experiencing such problems to stop using their motor homes and bring them in for repair. After receiving the notice, plaintiffs had their motor home repaired and continued to use it. Later, while traveling in Florida in March 1995, plaintiffs began having the same problems with the motor home that had previously occurred. Feeling that the vehicle was not safe enough to drive back to Vermont, plaintiffs traded it in for $22,000 and purchased another, less expensive motor home. Plaintiffs claim that they incurred a final loss in excess of $33,000 by having to trade their motor home in at a reduced value due to its defective condition.

In October 1996, plaintiffs filed suit against Deere and Company and Oshkosh Truck Corporation alleging strict products liability, negligent products liability, breach of an implied warranty of merchantability, and breach of an implied warranty of fitness for a particular purpose. The superior court granted defendants' motion for judgment on the pleadings, ruling that (1) self-destruction of the product itself cannot form the basis for products liability or negligence claims; and (2) the statute of limitations had run on the warranty claims. On appeal, plaintiffs argue that the trial court erred in ruling that (1) they were precluded from recovering economic losses pursuant to their products liability claims, and (2) their warranty claims were brought outside the limitations period.

We first consider the warranty claims. Plaintiffs argue that the recall notice sent to them in October 1994 should be construed as a warranty and a new promise reviving prior warranties. In plaintiffs' view, the post-sale representations and promise to repair contained in the notice modified the original contract for the purchase of their motor home, and thus tolled the statute of limitations for their warranty claims.

■ We find no merit to these arguments. By the time that Deere and Company issued the recall notice in October 1994, more than five years had passed since plaintiffs purchased the Winnebago, and thus the statute of limitations had already run on their warranty claims. See 9A V.S.A. § 2-725(1), (2) (action for breach of contract for sale must be commenced within four years after cause of action has accrued; breach-of-warranty action accrues upon tender of delivery of goods). The recall notice could not have revived warranties that were no longer actionable. Nor did the recall notice, standing alone, expressly or impliedly make any warranties regarding the Winnebago; rather, it merely promised to install a wiring improvement parts kit.

We now turn to plaintiffs' products liability claims. This Court has adopted the doctrine of strict products liability as embodied in Restatement (Second) of Torts § 402A. See *Zaleskie v. Joyce*, 133 Vt. 150, 155, 333 A.2d 110, 114 (1975). "Under that doctrine, a manufacturer is strictly liable for physical harm or property damages resulting from a defective product that reaches a user without undergoing substantial change." *Webb v. Navistar Int'l Transp. Corp.*, 166 Vt. 119, 126, 692 A.2d 343, 346 (1996); see Restatement (Second) of Torts § 402A(1) (1965) (one who sells any product in defective condition unreasonably dangerous to user or user's property is "subject to liability for *physical harm* thereby caused to the ultimate user . . . or to his property") (emphasis added).

Over the years, plaintiffs proceeding under § 402A have sought damages for (1) physical injuries to persons; (2) physical damage to property other than the dangerous product itself; (3) physical damage to the product itself; and (4) consequential damages that involve only commercial or economic loss. Generally, all jurisdictions have allowed recovery for the first two types of injury. Some jurisdictions have allowed recovery for damage to the product itself, though most often only if the loss occurred in the context of a dangerous situation such as an accident. Very few jurisdictions, however, have allowed recovery based on claims of commercial or economic loss. See P. Sherman, Products Liability for the General Practitioner § 10.05, at 287-90 (1981) (general rule is that damages for commercial or purely economic loss are unavailable in strict products liability actions); see also 2 L. Frumer & M. Friedman, Products Liability § 13.11, at 150 (1998) (under traditional and still prevailing rule, economic losses caused by product failure must be pled in warranty or contract, not products liability); 2 M. Madden, Products Liability § 22.23, at 340-41

(2d ed. 1988) (majority rule is that economic loss, including damage to product itself unaccompanied by injury to persons or damage to other property, is generally not recoverable in products liability actions); W. Keeton, Prosser & Keeton on Torts § 101, at 708-09 (5th ed. 1984) (discussing theories available to recover various types of losses).

The leading case for the majority position is *Seely v. White Motor Co.*, 403 P.2d 145 (Cal. 1965). There, the brakes on the plaintiff's truck failed, resulting in an accident that caused some damage to the truck but did not injure the plaintiff. The plaintiff sought damages for repair of the truck, the purchase price of the truck, and profits lost in his business because he was unable to use the truck. Writing for the majority, Justice Traynor agreed that physical injury to property, including the defective product itself, should be compensable under strict liability in tort, but found that the plaintiff had failed to demonstrate that the alleged defect caused the physical damage to the truck. See *id.* at 152. As for the economic losses claimed by the plaintiff, the court reasoned that while consumers should not have to bear the risk of physical injury caused by products that manufacturers bring into the stream of commerce, consumers can be fairly charged with the risk that the products they purchase will not match their economic expectations, at least to the extent that the manufacturers have not warranted to that effect. See *id.* at 151.

In the leading case for the minority position, the New Jersey Supreme Court allowed a plaintiff to seek damages under a theory of strict tort liability for a carpet that had developed lines in it. See *Santor v. A & M Karagheusian, Inc.*, 207 A.2d 305, 311-13 (N.J. 1965). The court opined that the purpose behind the doctrine of strict liability in tort — to ensure that the cost of injuries or damages resulting from defective products is borne by the manufacturers rather than the consumers — applies with equal force even when the product is not dangerous and the damage does not extend beyond the product itself. See *id.* at 312.

In the context of a maritime law case, the United States Supreme Court considered these and other intermediate positions concerning the recoverability of economic losses under a theory of strict products liability. See *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986). In that case, charterers of a supertanker sought damages for repair costs and lost income resulting from a defective turbine engine that ceased functioning while at sea. After surveying the case law, the Court held that a manufacturer in a commercial relationship has no duty to prevent a product from

injuring itself, and thus could not be liable for such damages under a theory of strict products liability. See *id.* at 871. Stating that damage to the defective product itself "is most naturally understood as a warranty claim," *id.* at 872, the Court rejected the intermediate position taken by courts that had adopted a risk-of-harm analysis under which plaintiffs could receive compensation for damage to the product itself depending on "the nature of the defect, the type of risk, and the manner in which the injury arose." *Id.* at 869-70.

The reaction to *East River* has been mixed. Most courts have adopted its holding, even in cases involving consumer transactions. See *Lee v. General Motors Corp.*, 950 F. Supp. 170, 174 (S.D. Miss. 1996) (concluding that Mississippi Supreme Court would follow *East River* and deny damages for economic losses associated with replacement of fiberglass roof on vehicles alleged to be dangerously defective); *Bocre Leasing Corp. v. General Motors Corp.*, 645 N.E.2d 1195, 1195 (N.Y. 1995) (adopting *East River* reasoning in denying recovery for economic losses incurred when helicopter incurred damage during emergency landing and transportation from scene of accident); *Continental Ins. v. Page Engineering Co.*, 783 P.2d 641, 647-48 (Wyo. 1989) (following *East River* in denying economic losses resulting from failure of dragline pulley used in mining operation); see also *Somerset Marine, Inc. v. Forespar Products Corp.*, 876 F. Supp. 1114, 1116 (C.D. Cal. 1994) (*East River* applies in consumer as well as commercial transactions); *Karshan v. Mattituck Inlet Marina & Shipyard Inc.*, 785 F. Supp. 363, 366 (E.D.N.Y. 1992) (same); *Wellcraft Marine v. Zarzour*, 577 So. 2d 414, 418 (Ala. 1990) (rule that tort action may not be premised on product defect that results in damage only to product itself applies in both commercial and consumer transactions); *Jones v. General Motors Corp.*, 631 A.2d 665, 666 (Pa. Super. Ct. 1993) (same). But see *Sherman v. Johnson & Towers Baltimore, Inc.*, 760 F. Supp. 499, 501-02 (D. Md. 1990) (suggesting that *East River* holding is not controlling in cases involving consumer transactions).

Some courts have rejected the reasoning in *East River*, however, finding that the purpose and principles behind the doctrine of strict products liability require a risk-of-harm analysis before a determination can be made as to whether economic losses, including damage to the product itself, may be the sole basis for a products liability suit. See *Pratt & Whitney Canada, Inc. v. Sheehan*, 852 P.2d 1173, 1179-81 (Alaska 1993) (declining to abandon risk-of-harm test in determining that damage to aircraft forced to make emergency landing due to engine failure is compensable in products liability action); *Washing-*

*ton Water Power Co. v. Graybar Elec. Co.*, 774 P.2d 1199, 1209-10 (Wash. 1989) (refusing to abandon risk-of-harm analysis in case involving fire hazard created by defective insulators). The federal district court in Vermont has predicted that this Court would bar the recovery of economic losses resulting from the sale of dangerously defective lacrosse stick heads in a commercial transaction, see *Vermont Plastics, Inc. v. Brine, Inc.*, 824 F. Supp. 444, 449 (D. Vt. 1993), but that we would allow the recovery of economic losses suffered by a farmer in a consumer transaction involving an ineffective herbicide that resulted in a decreased yield of corn. See *Mainline Tractor & Equipment Co. v. Nutrite Corp.*, 937 F. Supp. 1095, 1104 (D. Vt. 1996).

■ Much of the reasoning in the cases employing a risk-of-harm analysis is persuasive, and we leave open the possibility that under certain circumstances we may allow recovery for damages resulting from physical harm only to the defective product itself. But circumstances warranting such an outcome are not present here. In this case, plaintiffs do not seek damages for any physical harm. Rather, they seek damages for purely economic losses — the reduced value of the motor home resulting from its defective wiring system and related problems.[*] Cf. *University of Vermont v. W.R. Grace & Co.*, 152 Vt. 287, 287, 565 A.2d 1354, 1354 (1989) (product liability action alleging property damage due to asbestos contamination); *Northridge Co. v. W.R. Grace & Co.*, 471 N.W.2d 179, 180 (Wis. 1991) (complaint stated viable products liability claim in alleging that asbestos had caused physical harm by contaminating and thus limiting function of buildings in which it was located). In reality, plaintiffs are seeking damages for not having received the benefit of the bargain to which they believed they were entitled. Their loss relates to their disappointed commercial expectations, and thus is not recoverable under a theory of products liability. Cf. *Bagel v. American Honda Motor Co.*, 477 N.E.2d 54, 58 (Ill. App. Ct. 1985) (no recovery available in products liability action for damages resulting when cam chain broke while motorcycle was idling). Absent physical harm, § 402A is not implicated, at least not under the instant circumstances.

Plaintiffs contend that preventing them from bringing their products liability claims would be bad public policy because it would

---

[*] Plaintiffs allege that they were in an accident caused by the motor home's defects, but the accident occurred nearly two years before they filed suit, and their complaint indicates that they are seeking compensation for the "final loss" resulting when they traded the vehicle in at a reduced value.

encourage persons to operate dangerously defective vehicles until they suffer physical harm as the result of an accident. We do not find this argument persuasive. See *National Crane Corp. v. Ohio Steel Tube Co.*, 332 N.W.2d 39, 44 (Neb. 1983) (fact that incurring replacement costs also removed potential future tort liability does not convert economic loss into physical harm or transform warranty cause of action into products liability action). We are satisfied that permitting recovery for defective products whenever physical harm occurs adequately serves the public policy behind the doctrine of strict products liability — to create incentives for manufacturers to produce safe products by making them absorb and pass on the costs of injuries resulting from defective products. See *Webb*, 166 Vt. at 126, 692 A.2d at 346. If we were to allow recovery for purely economic losses in products liability actions absent any physical harm based solely on claims that an alleged defect could have endangered persons or their property, warranty law would, in effect, be subsumed into tort law.

Nor are we persuaded that, simply because this case involves a consumer transaction, any type of damages alleged, regardless of whether they involve physical harm, can support a products liability action. The distinction between consumer and commercial transactions does not further the safety rationale behind the doctrine of strict products liability. See *Pratt*, 852 P.2d at 1179 n.9 (potentially dangerous products are just as dangerous to public when in hands of commercial or industrial users as they are in those of individual consumers); *Somerset Marine*, 876 F. Supp. at 1116 (applying economic loss doctrine in noncommercial context does not erode manufacturer's incentive to produce safe products because manufacturers remain accountable for physical harm to consumers and commercial entities alike). Further, as Justice Traynor stated in *Seely*, "[t]he law of warranty is not limited to parties in a somewhat equal bargaining position." 403 P.2d at 151; see *Pratt*, 852 P.2d at 1179 n.8 (distinguishing between consumer and commercial transactions in context of warranty law is questionable given that even commercial buyers do not have input into extent of manufacturers' warranties); *Danforth v. Acorn Structures, Inc.*, 608 A.2d 1194, 1200-01 (Del. 1992) (recognizing exception to economic-loss doctrine based on whether consumer or commercial transaction took place would defeat intent of legislature in adopting Uniform Commercial Code, which provides remedies to all parties involved in contracts for sale of goods). This is true notwithstanding that in Vermont sellers may not exclude or limit their

liability in transactions involving ordinary consumers. See 9A V.S.A. § 2-316(5); *Mainline Tractor*, 937 F. Supp. at 1104. Our warranty law covers consumer transactions and places limits on when warranty claims can be brought. See 9A V.S.A. § 2-725(1), (2) (four-year statute of limitations for warranty claims based on contracts for sale of goods). Plaintiffs brought claims that are actionable only under warranty law, but the statutory period for bringing those claims had already expired.

*Affirmed.*