## Keith Sorge and Patricia Sorge v. State of Vermont

[762 A.2d 816]

No. 98-573

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed August 25, 2000

---

*Mitchell L. Pearl* and *Devin McLaughlin* of *Langrock Sperry & Wool,* Middlebury, for Plaintiffs-Appellants.

*William H. Sorrell,* Attorney General, Montpelier, *Susanne R. Young,* Assistant Attorney General, Waterbury, and *Michael O. Duane,* Assistant Attorney General, Montpelier, for Defendant-Appellee.

**Amestoy, C.J.** Plaintiffs Keith and Patricia Sorge appeal a Chittenden Superior Court order dismissing their action against the Department of Social and Rehabilitation Services (SRS) for negligent supervision and control of a minor in its custody. Plaintiffs argue that the court improperly granted the State's V.R.C.P. 12(c) motion on the issue of proximate cause, and that the State is not entitled to

judgment on the pleadings on its alternative assertions that it owed no duty of care to plaintiffs or that sovereign immunity protects it from suit. We affirm.

While he delivered bundles of newspapers in Burlington on the morning of November 6, 1994, plaintiff Keith Sorge suffered severe injuries when assaulted by Cole Grant. At the time of the assault, Grant was a minor in SRS custody. Mr. Sorge and his wife Patricia filed suit against the State alleging that SRS was negligent in failing to adequately supervise and control Grant, and that as a result of the State's negligence, Mr. Sorge sustained injuries causing Mrs. Sorge's loss of consortium. Plaintiffs' complaint alleged that SRS was aware that Grant had a history of violent, assaultive and delinquent behavior. On the weekend of the assault, SRS had temporarily placed Grant with his mother. Plaintiffs' complaint alleged that Grant's mother was either unlikely or incapable of adequately supervising him.

The State's V.R.C.P. 12(c) motion for judgment on the pleadings advanced three arguments: (1) the State was immune from suit for the performance of discretionary functions by state employees under 12 V.S.A. § 5601(e)(1); (2) the State owed no duty of care to plaintiffs beyond its duty to the public at large; and (3) the alleged negligence of the State was not, as a matter of law, the proximate cause of plaintiffs' injuries. Assuming for the purpose of deciding the motion that SRS was negligent in placing Grant with his mother, the superior court considered the central issue to be "whether it was foreseeable that Grant would assault someone." The court decided that it was not, and granted the State's motion on the ground that SRS's negligence could not be found to be the proximate cause of Mr. Sorge's injuries. As the court explained:

> Even if the allegations contained in Plaintiffs' complaint were proved, Plaintiffs would not be able to make out a prima facie case of negligence because the proximate cause of their injuries was not, as a matter of law, the Department's negligent supervision and placement of Grant Cole. Rather, the direct cause of their injuries was the intervening, independent act of Grant, an act which the Department had no duty to anticipate. Moreover, to conclude that Grant's negligence is transferable to the State would erode the public policy of rehabilitation of juveniles through reunification with their families and the public, and which views preventative detention as a last resort.

When reviewing a V.R.C.P. 12(c) motion for judgment on the pleadings, the issue before the court is whether the movant is entitled to judgment as a matter of law based on the pleadings. See *Quesnel v. Town of Middlebury*, 167 Vt. 252, 254, 706 A.2d 436, 437 (1997). "If plaintiffs' pleadings contain allegations that, if proved, permit recovery, defendants are not entitled to a dismissal." *Id.* Because judgment was granted on the pleadings in this case, we accept as true all factual allegations contained in the complaint and all reasonable inferences that can be drawn from those allegations. See *Paquette v. Deere & Co.*, 168 Vt. 258, 258-59, 719 A.2d 410, 411 (1998).

"In a negligence case, neither the issues of proximate cause nor the [sovereign] immunity defenses become germane until it has been established that a defendant owes to a plaintiff a duty of care that has been breached." *Fox v. Custis*, 372 S.E.2d 373, 375 (Va. 1988). Because we conclude that the State did not owe plaintiff a duty of care, we find it unnecessary to address the issues of proximate cause and sovereign immunity. See *Rubin v. Town of Poultney*, 168 Vt. 624, 625, 721 A.2d 504, 506 (1998) (mem.) ("Absent a duty of care, an action for negligence fails."). Accordingly, we affirm the court's dismissal of plaintiffs' complaint.[*]

The existence of a duty is a question of law to be decided by the court. See *Denis Bail Bonds, Inc. v. State*, 159 Vt. 481, 487, 622 A.2d 495, 499 (1993). In determining whether a governmental body has undertaken a duty of care toward specified persons beyond its duty to the public at large, we consider: (1) whether an ordinance or statute sets forth mandatory acts clearly for the protection of a particular class of persons, rather than the public as a whole; (2) whether the government has actual knowledge of a condition dangerous to those persons; (3) whether there has been reliance by those persons on the government's representations and conduct; and (4) whether failure by the government to use due care would increase the risk of harm beyond its present potential. See *Sabia v. State*, 164 Vt. 293, 299, 669 A.2d 1187, 1191 (1995) (*Sabia I*).

Plaintiffs concede that no statute assigns to the State a specific duty of care with respect to plaintiffs individually, as distinct from the

---

[*] This Court may affirm a trial court's decision if the correct result is reached, despite the fact that the court based its decision on a different or improper rationale. See *Bissonnette v. Wylie*, 166 Vt. 364, 370, 693 A.2d 1050, 1055 (1997) ("We agree with the trial court's conclusion, but use a different rationale to reach it."); *Hudson v. Town of East Montpelier*, 161 Vt. 168, 170, 638 A.2d 561, 563 (1993) ("[W]e need not adopt the court's rationale in affirming its conclusion.").

duty the State owes to them as members of the general public. This distinguishes the instant case from *Sabia I*. In *Sabia I*, SRS social workers knew of abuse but failed to protect sisters who had been molested by their stepfather despite specific statutory requirements that SRS protect such endangered children. In *Sabia I*, the existence of a specific statutory duty was critical to our conclusion that SRS had a duty to protect the sisters. Indeed, the opinion emphasized the state social workers' neglect of their "statutory duty to provide assistance to children seeking protection from sexual abuse." *Id.* at 296, 669 A.2d at 1190.

Subsequent cases have taken notice of the critical role the statutory duty played in our *Sabia I* decision. See, e.g., *Johnson v. State Dep't of Health*, 165 Vt. 588, 589, 682 A.2d 961, 963 (1996) (mem.) ("In *Sabia [I]* we emphasized the first factor [of the four-factor duty of care test], noting that the Department of Social and Rehabilitation Services (SRS) had a statutory mandate to investigate reports of child abuse and render appropriate services and that the stated purpose of the statute was to protect children whose health and welfare may be adversely affected through abuse or neglect.") (internal quotation marks and citations omitted); *Sabia v. Neville*, 165 Vt. 515, 521, 687 A.2d 469, 473 (1996) (*Sabia II*) ("In *Sabia I*, we held that the State of Vermont could be liable 'when state social workers neglect their statutory duty to provide assistance to children seeking protection from sexual abuse.' The duty of care was derived mainly from [relevant statutory provisions] . . . .") (citations omitted).

Here, plaintiffs cannot and do not argue that "the relevant statutory provisions create a duty on the part of SRS to assist a particular class of persons to which plaintiffs belong and to prevent the type of harm suffered by plaintiffs." *Sabia I*, 164 Vt. at 299, 669 A.2d at 1192 (citations omitted). The only specific statutory duty of care SRS owed was to Grant, a minor in its custody, as 33 V.S.A. § 5501 "sets forth mandatory acts for the protection of a particular class of persons" to which Grant belonged. *Id.* at 299, 669 A.2d at 1190; see 33 V.S.A. § 5501 (listing purposes of child welfare laws).

In this case, plaintiffs allege a breach of duty of care based on the State's failure to control the actions of the juvenile; they did not allege that the State breached a duty of care by failing to warn plaintiff Keith Sorge that he was at risk of being harmed by the juvenile. Generally, there is no duty to control the conduct of another in order to protect a third person from harm. *Peck v. Counseling Serv.*

*of Addison County, Inc.*, 146 Vt. 61, 64-65, 499 A.2d 422, 425 (1985). The Restatement (Second) of Torts § 315 (1965) provides:

> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives to the other a right to protection.

Plaintiffs contend that an exception arises by virtue of the principle set forth at Restatement (Second) of Torts § 319, entitled "Duty of Those in Charge of Persons Having Dangerous Propensities," which provides:

> One who takes charge a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.

Section 319 describes one of the special relationships giving rise to affirmative duties under § 315. See *Sage v. United States*, 974 F. Supp. 851, 859 (E.D. Va. 1997) (stating that § 319 "details" type of § 315 relationship); *Lipari v. Sears, Roebuck & Co.*, 497 F. Supp. 185, 190 n.5 (D. Neb. 1980) ("The Restatement sections following § 315 present specific examples of special relationships giving rise to an affirmative duty.").

The salient inquiry is, thus, whether a duty of care is owed to plaintiffs by reason of the State's relationship with the juvenile tortfeasor. A breach of the so-called "duty to control" is relevant to a claim of negligence only if it is first established that the State's relationship with the person to be "controlled" is such that it is fair and just to impose upon the State a duty to control the person's conduct to prevent him from causing harm to another. Plaintiffs argue that SRS, knowing of Cole Grant's violent history, had a duty to take reasonable precautions to control the minor for the protection of Keith Sorge.

Plaintiffs contend — and the State concedes — that a "special relationship" exists between the State and the juvenile, at least to the extent that SRS by law has charge of children placed with it pursuant to 33 V.S.A. §§ 5528-5529. Plaintiffs argue that this relationship is

sufficient to provide an exception to the general principle that there is no duty to control the conduct of a third person as to prevent him from causing physical harm to another. We disagree.

Although plaintiffs would have us begin and end the analysis of the State's duty of care in this case by reliance on § 319 and its accompanying illustrations, duty is not sacrosanct in itself, but only "'an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection.'" *Denis Bail Bonds*, 159 Vt. at 487, 622 A.2d at 499 (quoting W. Prosser & W. Keeton, The Law of Torts § 53, at 358 (5th ed. 1984)). "[W]hether a duty exists is ultimately a question of fairness. The inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution." *Langle v. Kurkul*, 146 Vt. 513, 520, 510 A.2d 1301, 1305 (1986) (quoting *Kelly v. Gwinnell*, 476 A.2d 1219, 1222 (N.J. 1984)) (emphasis, internal quotation marks and citation omitted).

The difficulty with an assertion that a State's "special relationship" to third persons within its custody imposes a "duty to control" is that it assumes the State's purpose is to "control" all persons within its custody. While it is possible to envision circumstances where the State's purpose and capacity to control "a person having dangerous propensities" is much more explicit than the facts presented here, we have previously rejected a legal theory that seeks to premise State liability on the acts of a third person released pursuant to a State rehabilitative program. See *Rivers v. State*, 133 Vt. 11, 14, 328 A.2d 398, 400 (1974) (rejecting argument for transferable liability to State "where there is release on probation or parole, or even for early release based on good time. Such a theory might hold the Legislature itself to be responsible . . . based on a release from a sentence too short to rehabilitate . . . .").

Furthermore, this application of the § 319 exception to the rule that there is no common-law duty to control the conduct of another to protect a third person has been rejected by jurisdictions that have recognized that most juvenile and adult programs dealing with persons committed to the custody of the State are intended to rehabilitate conduct rather than control it. See *Davenport v. Community Corrections of Pikes Peak Region, Inc.*, 962 P.2d 963, 968 (Colo. 1998) ("Community corrections . . programs designed to . . . reintegrate incarcerated offenders into society."); *Finnegan v. State*, 138 Vt. 603, 420 A.2d 104 (1980); see also *Ruf v. Honolulu Police Dep't*, 972 P.2d 1081, 1093 (Haw. 1999) (in declining to apply § 319 to

alleged negligent release of prisoner by police, court notes that risk of liability could pressure police to "err more often on the side of excessive detention"). Thus, for example, parents of a restaurant employee who was raped and killed by a coworker, who had been conditionally released from prison, asserted that § 319 of the Restatement established a duty of care on the part of the Kansas Department of Corrections. The Supreme Court of Kansas found that neither the parole officer nor the department of corrections had charge of the individual who committed the assault to the extent necessary to fall within § 319. See *Schmidt v. HTG, Inc.*, 961 P.2d 677, 687 (Kan. 1998). In rejecting the imposition of liability upon the State under the rationale of § 319, the court observed:

> [An] overbroad construction . . . escalates the State's responsibility to that of the virtual guarantor of the safety of each and every one of its citizens from illegal and unlawful actions of every parolee or person released from custody under any type or kind of supervision.

*Id.*; see also *Thompson v. County of Alameda*, 614 P.2d 728, 735 (Cal. 1980) ("parole and probation release . . . comprise an integral and continuing part in our correctional system authorized by the Legislature, serving the public by rehabilitating substantial numbers of offenders and returning them to a productive position in society."); *Whitcombe v. County of Yolo*, 141 Cal. Rptr. 189, 199 (Ct. App. 1977) ("Were we to find a cause of action [here] we would in effect be encouraging the detention of prisoners in disregard of their rights and society's needs."); *Rivers*, 133 Vt. at 14, 328 A.2d at 400 (argument that State should be liable for harm caused by person on rehabilitative release for failing to control such persons "runs dangerously parallel to the arguments for preventative detention").

Even where the entity that has nominal custody of an individual is private, courts have determined that the rehabilitative purpose of such programs and the corollary absence of the type of custodial control envisioned by § 319 do not give rise to a "special relationship" sufficient to impose liability for injuries caused to a third party by an individual within the "charge" of the entity. See, e.g., *Beauchene v. Synanon Found., Inc.*, 151 Cal. Rptr. 796, 799 (Ct. App. 1979) (holding that rehabilitation agency, whether public or private, has no duty to control a convict participating in its rehabilitation program), cited in *Cardenas v. Eggleston Youth Center*, 238 Cal. Rptr. 251, 252-53 (Ct. App. 1987) (same); *Davenport*, 962 P.2d at 968-69 (social utility and

level of control of community corrections program precludes § 319 liability). But see *Dudley v. Offender Aid & Restoration of Richmond, Inc.*, 401 S.E.2d 878, 882-83 (Va. 1991) (holding privately owned halfway house liable for § 319 negligence action because public policy considerations not same for private institution as for public officials).

Arguing the applicability of § 319 to the instant case, plaintiffs rely upon an example in which the defendant is the operator of a private sanitarium from which an insane patient is permitted to escape through the negligence of guards. See Restatement (Second) of Torts § 319, cmt. a, illus. 2. Apart from other distinctions, it is clear that the Restatement's authors present an example in which there can be little doubt that the purpose of the facility was to "control" an individual committed to the facility by securing him within the confines of the sanitarium. See *Knight v. Rower*, 170 Vt. 96, 106, 742 A.2d 1237, 1244 (1999) (citing Restatement (Second) of Torts § 319, illus. 1, 2 (noting hospitals for contagious diseases and institutions guarding insane people as examples) ("[Section 319] applies, for example, where the person controlled is infirm in such a way that any uncontrolled social contact would pose a dangerous risk to others and an institution has been charged with caring for that person.")).

However, the concerns that prevented other courts from extending liability to custodians of inmates and juveniles are present in this case. As the superior court stated, imposing the negligence claimed here on the State would erode the public policy of rehabilitation of juveniles through reunification with their families and the public. See 33 V.S.A. § 5501(a)(2) ("to remove from children committing delinquent acts the taint of criminality and the consequences of criminal behavior and to provide a program of treatment, training, and rehabilitation consistent with the protection of the public interest"); § 5501(a)(3) ("to achieve the foregoing purposes, whenever possible, in a family environment, separating the child from his parents only when necessary for his welfare or in the interests of public safety"). SRS's actions here were "authorized by statute, and [are] an integral part of the rehabilitative function" of their mission. *Finnegan v. State*, 138 Vt. at 605, 420 A.2d at 105. The Legislature has weighed the public interest in safety against the public policy favoring rehabilitation of juveniles through reunification with their families and the community, and has struck a balance in favor of rehabilitation. See 33 V.S.A. § 5535 (emphasizing the rehabilitative and nonpunitive nature of juvenile proceedings).

Although the SRS plan for Grant failed with serious consequences for plaintiffs, imposing a "blanket liability" upon the State is not the

remedy for such a failure. *Thompson*, 614 P.2d at 734. The general public benefits from legislative efforts to rehabilitate offenders — particularly juvenile offenders — and consequently "'each member of the general public who chances to come into contact with a parolee bear[s] the risk that the rehabilitative effort will fail . . . .'" *Id.* at 735 (quoting *Johnson v. State*, 447 P.2d 352, 364 (Cal. 1968)) (alteration and omission in original). We echoed this sentiment with regard to adult furloughees in *Rivers*, 133 Vt. at 13, 328 A.2d at 399:

> These statutes represent a part of the rehabilitative pattern for criminal offenders that the Legislature has seen fit to implement. That body deliberately elected to put upon the public the risks incident to such a program, in return for the presumably greater rehabilitative returns. Whether this was wise policy is not a judicial concern, since it was clearly within the proper province of the Legislature to undertake it.

Our statement in *Rivers* is of equal, or indeed even greater validity, where juvenile offenders are involved. See also *Nova Univ., Inc. v. Wagner*, 491 So. 2d 1116, 1119 (Fla. 1986) (McDonald, C.J., dissenting) ("The duty of care owed by the person or institution should only extend to those under its supervision. That duty should not extend to the public at large for the acts of the troubled youth. Indeed, several states have recognized the appropriateness of this limitation on liability.").

Here, plaintiffs ask us to equate SRS's statutory responsibility for the juvenile with the common-law "duty to control" envisioned in § 319. To find an exception to the common-law rule that there is no duty to control the conduct of another to protect a third person from harm, we conclude that the State's purpose in taking charge of the third person must explicitly be to control that person. Furthermore, to invoke that exception, the State's attempts to exercise that control must be consistent with the specific objective of insulating a person having dangerous propensities from uncontrolled contact with others whom the State knows or has reason to know are likely to be harmed by the person the State intends to isolate.

Thus, we decline to impose a duty of care on the State that would disturb the delicate balance the Legislature has crafted between the best interests of children and the broader interests of public safety. We hold that SRS owed no duty of care to plaintiffs

based upon a failure to control the actions of the juvenile, Cole Grant. Absent this duty, plaintiffs' negligence action must fail. See *Rubin*, 168 Vt. at 625, 721 A.2d at 506.

*Affirmed.*