Treetop at Stratton Condo. Ass'n v. Treetop Dev. Co., No. 147-3-09 Wmcv (Wesley, J., Feb. 4, 2011)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT
## SUPERIOR COURT

| | |
|---|---|
| TREETOP AT STRATTON CONDOMINIUM ASSN.,Inc.<br>  Plaintiff<br><br>  v.<br>Treetop Development Co.,LLC; Intrawest Stratton Development Corp.; DEW Construction Corp.; and Bruno Assoc. Inc.<br>  Defendants<br><br>Treetop Development Co.,LLC; Intrawest Stratton Development Corp.<br>  Third Party Plaintiffs<br><br>  v.<br> DEW Construction Corp.<br>  Third Party Defendant<br><br>DEW Construction Corp.<br>  Fourth Party Plaintiff<br>  v.<br>Cameron Bros. Inc. &<br>Cassella Construction, Inc.<br>  Fourth Party Defendants | **WINDHAM UNIT, CIVIL DIVISION**<br>**Docket No. 147-3-09 Wmcv** |

## OPINION & ORDER
## RE: BRUNO AND DEW'S MOTION FOR SUMMARY JUDGMENT

In this action claiming damages arising from alleged faulty construction of the Treetop Condominiums on Stratton Mountain, Defendant DEW and Defendant Bruno have moved for summary judgment pursuant to Vermont Rule of Civil Procedure 56. The separate motions for summary judgment will be addressed and consolidated in this opinion and order. Each Defendant urges summary judgment in its favor because (1) Plaintiff's claim of negligence is barred by the economic loss rule, and (2) Plaintiff's claim for breach of implied warranty of habitability is unavailable where the parties lack contractual privity.

The Court concludes, as a matter of law, that the economic loss rule prevents the Association's tort claims against DEW and Bruno, since Plaintiff is alleging economic losses and no exception to the economic loss rule is available. Likewise, the Association's implied warranty claims fail as a matter of law since there is no contractual privity between the parties. Accordingly, the Court GRANTS DEW's and Bruno's respective motions for summary judgment.

**Facts**

Plaintiff, Treetop at Stratton Condominium Association, Inc. (the Association), is a unit owner's association filing suit in its representational capacity. Plaintiff filed its complaint on March 18, 2009. It alleged that Defendants Treetop Development Company, LLC (TDC) and Intrawest Stratton Development Corporation (ISDC) are closely related companies, both engaged in the development of the Treetop condominium project. The complaint further recites various problems that have become known since Plaintiff assumed responsibility for representing the interests of Treetop's unit owners, including: improperly constructed roads, improperly designed and/or constructed drainage systems, absence of retaining walls in violation of permits, chronic roof leaks and faulty boilers. Plaintiff claims damages against TDC and ISDC for breach of express and implied warranties, breach of contract, negligence, negligent misrepresentation and for violation of the consumer fraud act. Plaintiff claims damages against DEW Construction Corp. (DEW) and Bruno Associates, Inc. (Bruno) for breach of implied warranties and negligence. By their answers, TDC and ISDC cross-claimed for third party indemnification against DEW. On February 26, 2010, DEW filed fourth party actions against its subcontractors, Cameron and Casella, for breach of contract and indemnification.

Defendant DEW is the general contractor that built the condominium development under contract with the developer/vendor ISDC. The complaint alleges that as a result of deficient construction, DEW is liable to Plaintiff for breach of common law warranties and negligence. The complaint states that DEW expressly or impliedly warranted that the work done by DEW was of merchantable quality and fit and proper for the uses they were designed, constructed, sold, and used. Subsequently, Plaintiff has clarified that its claims against DEW are based only on a theory of implied warranty. The complaint also alleges that DEW was negligent when it failed to comply with accepted standards of design, architectural, engineering and construction practices when DEW constructed the units and common areas, and that DEW failed to comply with certain permit terms.

Defendant Bruno was hired by Stratton Mountain Resort to provide civil engineering and architectural design services for the Treetop project. The Association is similarly seeking damages against Bruno for alleged costs associated with the repairs or replacement of portions of the condominium project under theories of negligence and breach of implied warranty.

**Standard**

In order to prevail on a motion for summary judgment, the moving party must show that there is no genuine issue as to any material fact, and that it is entitled to judgment as a matter of law. V.R.C.P. 56(c)(3). The moving party has the burden of proof, and the opposing party must be given the benefit of all reasonable doubts and inferences in determining whether a genuine issue of material fact exists. *Price v. Leland*, 149 Vt. 518, 521 (1988). Here, few, if any, material facts are in dispute, as the Defendants rely primarily upon legal arguments as the basis of their summary judgment motions.

2

**Analysis**

I.    *Tort Claims*

a.  *The Economic Loss Rule*

Since the resolution of these motions turns on the applicability of the economic loss rule, the Court begins with a general discussion of the rule. Generally, in order to sustain a claim for common law negligence, the plaintiff must establish that there was a legal duty owed by defendant to plaintiff, a breach of that duty, a demonstration that such breach was the proximate cause of plaintiff's harm, and that plaintiff suffered actual loss or damage. *O'Connell v. Killington, Ltd.*, 164 Vt. 73, 77 (1995). Negligence actions are usually better suited for resolving claims for unanticipated physical injury; principles of contract law are generally better suited for determining claims for consequential damages that parties have or could have addressed by agreement. *Spring Motors Distribs. v. Ford Motor Co.*, 489 A.2d 660, 672 (N.J. 1985).

In keeping with these general policies for maintaining analytic clarity in the consideration of appropriate remedies, the economic loss rule was developed by courts to prohibit tort recovery for purely economic losses. *Springfield Hydroelectric Co. v. Copp*, 172 Vt. 311, 314 (2001). The doctrine seeks to: (1) maintain the fundamental distinction between tort law and contract law; (2) protect commercial parties' freedom to allocate economic risk by contract; and (3) to encourage the party best situated to assess the risk of economic loss, (often the commercial purchaser), to assume, allocate, or insure against that risk. *1325 North Van Buren, LLC v. T-3 Group, Ltd.*, 716 N.W.2d 822, 831 (Wis. 2006). Although the rule had its origins in products liability, it is now well settled in Vermont that the economic loss rule also applies to commercial disputes outside the confines of products liability. *Springfield Hydroelectric*, 172 Vt. at 315; see also *Heath v. Wyatt*, 2006 VT 125, 181 Vt. 545 (economic loss rule applied in home construction defect context).

The rule assumes that the parties to a contract have allocated the economic risks of non-performance through the bargaining process. Therefore, a party to a contract who attempts to circumvent the contractual agreement by making a claim for economic loss in tort is, in effect, seeking to obtain a better bargain than originally made. Thus, when the parties are in privity, contract principles are generally more appropriate for determining remedies for consequential damages that the parties have, or could have, addressed through their contractual agreement. See *Heath*, 2006 VT 125, ¶ 15 (claim for contractor's negligence alleged by a home buyer for purely economic damages resulting from reduced value or costs of repair held more appropriate in contract rather than in tort); *Paquette v. Deere and Co., et al.*, 168 Vt. 258, 263 (1998) (the reduced value of a motor home due to a defective wiring system and related problems deemed as purely economic loss not recoverable in tort).

The cases have recognized limits to the economic loss rule. While the doctrine operates as a general rule to preclude recovery in tort for economic loss, it does so only for purely economic loss, defined broadly as pecuniary loss unaccompanied by any property damage or personal injury, other than damage to the product or service provided by the defendants. *Indianapolis-Marion County Pub. Library v. Charlier Clark & Linard, P.C., et al.*, 929 N.E.2d

722, 730 (Ind. 2010). Moreover, even when there is purely economic loss, there are exceptions to the general rule in certain circumstances where an independent duty that a party owes overwhelms the utility of the economic loss rule. *Id.* These exceptions are discussed in more detail below.

   b. *Economic Losses*

Defendants Bruno and DEW both argue that their liability to Plaintiff in negligence is limited in full or in part by the economic loss rule, since the bulk of the damages the Association claims fall squarely within the definition of economic losses. Defendant DEW concedes that some of the damages alleged, particularly damage to other property resulting from roof leaks, may constitute non-economic damage which would not fall under the economic loss rule. However, DEW asserts that the rest of Plaintiff's claimed damages consist of the cost to repair various components of the condominiums and accompanying common areas, and other quality upgrades made or anticipated as a result of disappointed expectations arising out of their unit purchase agreements with Stratton.

The Association responds that the economic loss rule is inapplicable here because its negligence claims are not based on intangible economic loss, but rather for actual physical harm to the Association's property. For instance, the Association claims that Defendant Bruno's negligently rendered design drawings caused property damage, including deterioration to walkways, water damage caused by improper elevations specified by the plans, and damage to roads and grounds. The Association claims it suffered physical harm to its property as a result of the deficient plans, and that such damage falls outside the scope of the economic loss rule as it is collateral to the site work Bruno designed (e.g. sidewalks are collateral to the alleged improper slope called for in Bruno's plans).

The Association makes similar allegations against DEW for negligent work leading to physical damage to property, and claims that it has already incurred expenses of over $60,000 to repair walkways, and will incur additional costs associated with the need to replace road surfaces, install curbs and restructure landscape. Such losses are neither intangible nor strictly economic, the Association argues, and thus should fall outside of the category of economic loss for which the rule applies. The Court does not find Plaintiff's analysis persuasive.

Economic loss has been defined more broadly than Plaintiff suggests, to include damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits, as well as the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was sold or manufactured. *Redarowicz v. Ohlendorf,* 441 N.E.2d 324, 327 (Ill. 1982); *Heath v. Palmer*, 2006 VT 125, ¶ 15. Therefore, to recover in negligence, there must be a showing of harm above and beyond disappointed expectations, since a buyer's desire to enjoy the benefit of his bargain is not an interest that tort law traditionally protects. *Redarowicz*, 441 N.E.2d at 327.

Accordingly, courts have determined that the overall "product" in the economic loss doctrine context is the product purchased by the plaintiff, not the product furnished by a defendant. *Indianapolis-Marion County*, 929 N.E. 2d at 731. This distinction is critical because

4

only the party furnishing the defective product or service is in a position to bargain with the purchaser of that product or service for allocation of the risk that the product or service will not perform as expected. *Id.* In other words, if a component is sold to the end-user as a part of a finished product, the consequences of its failure fall squarely within the rationale of the economic loss rule, and it is not considered "other property". *Id*. (citation omitted).

As applied to the facts here, the Association members purchased completed condominium structures from Stratton. They did not purchase the design plan from Defendant Bruno, nor the general contracting services from Defendant DEW, nor any other specific components of the larger project. The members purchased individual condominium units as the finished product from a highly-integrated network of transactions represented by the overall condominium development. Cf. *Indianapolis-Marion County*, 929 N.E.2d at 731 (for purposes of determining economic loss, plaintiff library purchased complete renovation and expansions of its facility, not individual components from individual subcontractors). Thus, regardless of whether or not the alleged negligence of Defendants here was the proximate cause of the construction defects, the "product" that the Association members purchased consisted of the entire condominium structures and any corresponding common areas, such that defects to one component of the product cannot fall within the "other property" exception to the economic loss rule.

A closer look at the damages alleged by Plaintiff reveals that the bulk of the damages claimed are essentially damage to the product itself, and not "other property". For instance, the Association's President, Matthew Stoltz, states that:

> "In or about 2006, a variety of defects began to emerge in the common areas of the Treetop Development. One such defect was the massive accumulation of water running off the road surface and pooling in front of the Treetop units…[T]he water runoff from the roads pooled onto the pavers…[T]his pooling, freezing and then thawing of the water caused the pavers to prematurely deteriorate. As a result the Association was forced to take remedial measures…"

Stoltz Aff. ¶¶ 8-12. Fundamentally, the Association alleges that deficiencies as to one or more components of the product its members purchased have resulted in damage to other parts of the product. Yet this type of injury, as courts routinely hold, falls within the economic loss rule. See *East River Steamship Corp. v. Transamerica Delaval, Inc.* 476 U.S. 858 (1986) (economic loss rule prohibits tort recovery when a product damages itself, causing economic loss, but does not cause personal injury or damage to any property *other than itself*). Stated another way, the repair and reconstruction of the curbs and sidewalks and other portions of the project are economic losses that arose from the Association's complaint that it did not receive the benefit of its bargain. See *Indianapolis-Marion County*, 929 N.E.2d at 732 (citing to a number of states that have similarly interpreted the economic loss rule in the construction/design defect context as prohibiting tort claims for losses arising where plaintiff is seeking the benefit of its bargain). Therefore, the Court must hold that the damages claimed by the Association are "economic losses" not generally recoverable in tort, aside from any damages claimed to personal property that Defendant DEW has conceded does not constitute economic loss.

*c. Privity of Contract*

The Association further argues that, even if this Court were to find that the damages alleged fall under the category of economic losses, the economic loss rule is nevertheless inapplicable here since there was no actual contract between the Association and either Defendant Bruno or DEW. The Association contends that the principles underlying the economic loss rule militate towards requiring that contractual privity be present to justify the rule's application. To support this proposition, Plaintiff cites to a recent decision by the Arizona Supreme Court in which the court reasoned that since the principal functions of the economic loss rule are to encourage private ordering of economic relationships and to uphold the expectations of the parties by limiting a plaintiff to contractual remedies for loss of the benefit of the bargain, the rule and the concerns underlying it are not implicated when the plaintiff lacks privity and cannot otherwise pursue contractual remedies. *Flagstaff Affordable Housing Ltd. P'ship. v. Design Alliance, Inc.*, 223 P.3d 664 (Ariz. 2010). The Association asserts that the Vermont Supreme Court has so far applied the economic loss doctrine only where a contract between the parties allocated liability, and not in a matter such as the instant one where no contract existed between Plaintiff and Defendants. The Association urges this Court to adopt the Arizona's court's reasoning. However, the holding in *Flagstaff* does not represent the state of the law in Vermont.

In multiple cases, the Vermont Supreme Court, as well as this Court, have applied the economic loss doctrine to disallow claims of economic loss to third parties absent privity of contract. See *Hamill v. Pawtucket Mut. Ins. Co.*, 179 Vt. 250, 253 (2005) (plaintiff insured's negligence claim against insurance adjuster for physical damage to property deemed purely economic losses recoverable under contract law and not tort); *Springfield Hydroelectric*, 172 Vt. 311 (economic loss rule applied despite lack of privity between owners of commercial hydroelectric facilities and employees of designated purchasing agent); see also *Mount Snow v. Grand Summit Resort Props., Inc.*, No.564-12-03 Wmcv (Vt. Super. Ct. Mar.1, 2007) (Wesley, J.) (economic loss rule applied to bar tort claims by a condominium owner's association against design professional despite lack of a contractual relationship). To be sure, the Supreme Court has yet to be presented squarely with the issue of whether privity is a prerequisite to the application of the doctrine in the construction/design defect context. However, courts of other states have considered the issue, and their decisions provide useful guidance.

One such influential decision by the Washington Supreme Court held that a general contractor could not recover purely economic damages in tort from an architect, an engineer, or an inspector, none of whom were in privity of contract with the general contractor. *Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1*, 881 P.2d 986, 992-993 (Wash. 1994). There, the Court stated:

> If tort and contract remedies were allowed to overlap, certainty and predictability in allocating risk would decrease and impede future business activity. The construction industry in particular would suffer, for it is in this industry that we see most clearly the importance of the precise allocation of risk as secured by contract. The fees charged by architects, engineers, contractors, developers, vendors, and so on are founded on their expected liability exposure as bargained and provided for in the contract....

6

*Id.* (citations omitted).

Guided by the rationale of the Washington Supreme Court, the Wyoming Supreme Court held that the economic loss rule prohibited a general contractor from proceeding in negligence against a project engineer**.** *Rissler & McMurry Co. v. Sheridan Area Water Supply Joint Powers Bd.*, 929 P.2d 1228, 1235 (Wyo. 1996). Acknowledging that the plaintiff contractor and defendant engineer were not in privity of contract, the court nevertheless held that the plaintiff "had the opportunity to allocate the risks associated with the costs of the work when it contracted with the [project owner] and, in fact, entered into a detailed contract which allowed it the means, method and opportunity to recover economic losses allegedly caused by [defendant's] negligence." *Id.* at 1235; see also *BRW, Inc. v. Dufficy & Sons, Inc.* 99 P.3d 66 (Colo. 2004) (subcontractor has opportunity to allocate risks of following specified design plans when it enters into contract with party involved in the1 network of contracts); *Indianapolis-Marion County*, 929 N.E 2d at 740 (no liability in tort to the owner of a major construction project for pure economic loss caused unintentionally by contractors, subcontractors, engineers, design professionals, or others engaged in the project with whom the project owner, whether or not technically in privity of contract, is connected through a network or chain of contracts).

Recently, in a case heard by the Utah Supreme Court with similar facts to the instant matter, a homeowner's association brought tort claims against a developer and builder. *Davencourt at Pilgrim's Landing Homeowners Ass'n. v. Davencourt* , 221 P.3d 234 (Utah 2009). The court applied the economic loss rule even though the association had no contract or opportunity to negotiate with the developer or builder. *Id*. at 243. The court reasoned that permitting tort causes of actions would frustrate the defendants' economic expectations. Further, the court held that to require privity of contract as a prerequisite to application of the economic loss rule would erode the basis for the existence of the rule – to preserve the distinction between tort and contract law - by recognizing a tort cause of action regardless of any existing contracts between various parties in a construction project explicitly allocating respective duties and exposures to risk. *Id*. at 243.

Here, the Association, as the representative of the end-purchasers of the construction project, was significantly connected to the network of interrelated contracts that governed the Treetop development project. Both DEW and Bruno are also part of this network of agreements, through which the respective duties, risks, and remedies of the all of the parties involved in the project were, or could have been, apportioned. Accordingly, despite the lack of direct contractual privity between the parties here, the Court cannot ignore the contract expectations that existed among the condominium owners, the developer, the general contractor DEW, the architect Bruno, and any other parties. To conclude otherwise would essentially impose the Plaintiff's economic expectations upon parties with whom Plaintiff did not deal, and alter the economic expectations created by contracts to which it was not a party. *Davencourt*, 221 P.3d at 243 (citations omitted).

*d. Professional Services Exception*

The Association further relies on the professional services exception to argue that the economic loss rule is inapplicable to preclude their tort claims. Plaintiff maintains that since Defendants provided professional services that resulted in property damage to the foreseeable end-user of their services - the Association - the exception should apply and overcome any limitations on their tort claims imposed by the economic loss rule. According to the Association, based on Vermont's strong public policy favoring the protection of consumer home buyers, the Vermont Supreme Court would likely uphold such an exception in construction defect cases with respect to negligent architects and general contractors. Additionally, Plaintiff cites to precedent from other states holding that a contractor could sue an architect for negligence notwithstanding the lack of a contractual relationship because the contractor's reliance on the architectural plans was foreseeable. See *Eastern Steel Constructors, Inc. v. City of Salem*, 549 S.E.2d 266 (W.V. 2001); *Ins. Co. of America v. Town of Manchester*, 17 F.Supp.2d 81, 86-87 (D. Conn. 1998). Nevertheless, the Court finds no exception applicable where there was no special relationship between the parties which might otherwise confer an independent duty on Defendants.

While yet to be found to apply under the particulars of any case, the professional services exception has been recognized by the Vermont Supreme Court insofar as the Court has intimated that purely economic losses may be recoverable because the parties have a special relationship, which creates a duty of care independent of contract obligations. *EBWS, LLC v. Britley Corp.*, 2007 VT 37, ¶ 31, 181 Vt. 513 (holding the exception inapplicable). The determinative factor is not whether one is licensed in a particular field, but rather whether the type of relationship created between the parties necessarily created a special duty of care beyond the terms of the services contract. *Id.* at ¶ 32.

In other circumstances, while the Vermont Supreme Court has recognized a design professional's duty to exercise reasonable care and responsibility in the design and construction of a project, this duty was held to arise directly out of a contractual commitment. See *Howard v. Usiak,* 172 Vt. 227, 235 (2001) (observing, in an action against architect for negligent design, that the duty against which the "negligence standard is applied generally arises from the contractual responsibilities the architect assumed"); see also *EBWS, LLC v. Britley Corp.*, 2007 VT 37, ¶¶ 31-32 (no special duty of care created beyond the terms of construction contract for a general contractor to create an exception to the economic-loss rule). Thus, whatever the incidents of the "special relationship" required to support the "professional services" exception to the economic loss doctrine may be, it is doubtful that they exist in the absence of privity of contract. *Id.*

Indeed, this Court has previously rejected the professional services exception and has applied the economic loss rule to claims by a condominium owner's association against a design professional because of the lack of any special relationship between the parties. *Mount Snow v. Grand Summit Resort Props., Inc.*, No.564-12-03 Wmcv (Vt. Super. Ct. Oct. 24, 2007) (Howard, J.). There, the Court declined to abandon the privity requirement in professional negligence cases, being unpersuaded that our Supreme Court would expand the possible scope of recovery by favoring an exclusive focus on foreseeability as sufficient to support a tort duty. *Id.* at 8. The circumstances presented by this case do not compel a different conclusion.

*e. Unreasonably Dangerous Condition Exception*

The Association also asserts that the economic loss doctrine should not apply here because DEW's and Bruno's alleged negligence created conditions that were unreasonably dangerous. Because of this risk, the Associations argues that it should not have to wait for any physical injury to persons, or more serious injury to property, to result before pursuing tort claims against Bruno and DEW. The Association relies on cases that hold a contractor, architect, or engineer liable to an end-user with whom there is no contractual privity, but where the defective conditions complained of create an unreasonable risk of harm to persons or property. See *Council of Co-owners Atlantis Condo., Inc. v. Whiting Turner Contracting Co., et al.*, 517 A.2d 336, 341-42 (Md. 1985); see also Prosser and Keeton on the Law of Torts, § 93 at 667-85 (5th ed. 1984) (requirement of privity of contract abandoned as basis of recovery by third parties for physical harm to themselves and tangible property against those who negligently supply, repair or construct in an unreasonably dangerous manner).

The Court is not convinced that this exception is available here. The undisputed facts demonstrate that there was no accident, injury, or collapse of any structure on the property. The Association's president alleges that due to flaws in the design and construction of elements comprising the Treetop development, large amounts of water runs off and accumulates on roadways, causing serviceability problems, including buildup of ice, which in turn creates dangerous conditions for passage by users either in cars or on foot. Stoltz Aff. ¶ 17. Notwithstanding these allegations, the damages claimed by the Association are still largely for the costs to repair the construction defects and all of the consequential losses that arose from those defects, absent any claim for personal injury or significant collateral property damage. Indeed, the Vermont Supreme Court, has held that "warranty law would, in effect, be subsumed into tort law" if the court were to allow recovery for purely economic losses absent any physical harm based solely on claims that an alleged defect *could* have endangered persons or their property. *Paquette,* 168 Vt. at 264 (denying the availability of purely economic damages under theories of strict liability in the defective motor home context) (emphasis added). Accordingly, without deciding whether the unreasonably dangerous condition exception to the economic loss rule is in fact recognized by Vermont's law, the Court concludes that Plaintiff is unable to put forth facts establishing the prerequisites to such an exception.

*II. Contract Claims*

*a. Breach of Implied Warranty of Habitability Claim*

The Association alleges that Defendants Bruno and DEW provided the Association with an implied warranty of habitability. The Association claims that Bruno provided an implied warranty by virtue of the fact that Bruno provided the Developer with plans. Bruno urges this Court to grant summary judgment in favor of Bruno on this claim because: (1) the issuance of plans by an engineer or architect does not, as a matter of law, create an express or implied warranty; (2) Bruno's contract with Stratton Mountain Resort specifically states that Bruno did not provide any warranties for its work on the project; (3) the Association and Bruno did not share a contractual relationship; and (4) the Association cannot produce any factual support for the contention that Bruno provided the Association with an implied warranty of habitability.

Defendant DEW argues similarly that the breach of warranty claim against it should be dismissed because Vermont has not recognized a claim of implied warranty where privity is absent, nor is it likely to do so.

The Association responds by arguing that the Vermont Supreme Court has never expressly limited implied warranty claims against professionals by requiring contractual privity, or otherwise, despite being given the opportunity to hold so in *Investment Properties, Inc. v. Lyttle*, 169 Vt. 487 (1999). Plaintiff, instead, cites to other jurisdictions that have considered and rejected lack of privity as a defense in breach of implied warranty actions bought by purchasers against contractors, architects, or engineers. See *Beachwalk Villas Condo. Ass'n. Inc., v. Martin*, 406 S.E.2d 372 (S.C. 1991). Plaintiff notes that these cases emphasize that the providers of construction services should have or did foresee that their services would be relied upon by home purchasers. Plaintiff insists that Defendants also knew or should have known that they were providing services ultimately utilized in the construction of a residential development. Again, noting Vermont's strong public policy of protecting home purchasers from the schemes of unscrupulous providers, and the Supreme Court's election to defer ruling on the issue in *Investment Properties*, Plaintiff urges the Court to deny Defendants' request for judgment as a matter of law on the claim of implied warranty.

Nonetheless, the Court is not convinced, and concludes that Vermont law requires privity in order to sustain a cause of action for breach of an implied warranty. While the *Investment Properties* Court ultimately declined to address whether a common law implied warranty should be enforced where privity was absent, the Court did note that the trial court had properly rejected an implied warranty claim based on *Bolkum v. Staab*, a case which held that implied warranties arise from the business of selling rather than the business of manufacturing. 169 Vt. at 495, citing *Bolkum v. Staab*, 133 Vt. 467, 470 (1975). Indeed, as Defendants have noted in their memoranda, in the limited number of cases addressing this issue, Vermont courts have generally rejected the contention that warranties can be implied in the absence of a contract between the parties. See *Mainline Tractor & Equip. Co., Inc., v. Nutrite Corp.*, 937 F.Supp. 1096 (D. Vt. 1996) (lack of privity barred recovery in products liability case under implied warranty theories); *Kinney v. Goodyear Tire & Rubber Co.*, 134 Vt. 571 (1976) (express warranty claim not controlling on statute of limitations issue in products liability case because lack of privity barred warranty claim); *Mount Snow v. Grand Summit Resort Props., Inc.*, No.564-12-03 Wmcv (Vt. Super. Ct. Oct. 24, 2007) (Howard, J.) at 10 (underlying policies of the limitation on duty reflected in the economic loss rule would be undermined and effectively nullified if Court were to allow an action based on implied warranties despite the lack of a contractual right or duty). See also *Davencourt,* 221 P.3d.at 252 (Utah joining the "overwhelming majority of states" in requiring there be privity of contract in order to bring a claim for breach of implied warranty).

That recognition of implied warranties under these circumstances would have a corrosive effect on the policies furthered by the economic loss doctrine is well illustrated by certain facts here. Bruno's contract with Stratton Mountain Resort specifically states that Bruno's services would be "performed in accordance with generally accepted practices of the engineers and/or scientists providing similar services… and without any other warranty, expressed or implied." At no time did the Association have a written or verbal contract with Bruno or DEW, nor did either defendant provide the Association or any other party guarantees related to the Project on which

10

Plaintiff could claim to have relied. Under these circumstances, Plaintiff's claims in reliance on "foreseeability" and "public policy" must be rejected as yet another attempt to elude the purposes of the economic loss doctrine. Defendants Bruno and DEW motion for summary judgment on the implied warranty claim is GRANTED.

b. Third-Party Beneficiary Status

Lastly, Plaintiff briefly alludes in its opposition briefs that it should be recognized as a third party beneficiary to any contracts between Stratton and Defendants which would afford it some of the rights Stratton would possess against Defendants. "The determination of whether a party may be classified as a third-party beneficiary is based on the original contracting parties' intention." *McMurphy v. State*, 171 Vt. 9 (2000). Whether or not a party is a third-party beneficiary is a matter of law and is based on the intention of the original contracting parties. *Morrisville Lumber Co., Inc. v. Okcuoglu*, 148 Vt. 180, 184-85 (1987). A party alleging third-party beneficiary status must present evidence indicating that the parties in privity entered into their agreement in contemplation of conferring a benefit on the third party. *Id*. Such evidence has not been presented by the Association, and thus the Court concludes that no third-party beneficiary claim is sustainable.

**WHEREFORE** it is hereby **ORDERED:**
Bruno's Motion for Summary Judgment is **GRANTED**.
DEW's Motion for Summary Judgment is **GRANTED,** except as limited by this opinion.

Dated at Newfane this 4th day of February, 2011.

_____
John P. Wesley
Superior Court Judge

11