*Town of Fairlee v. Forcier Aldrich & Assocs.*, No. 211-12-17 Oecv (Harris, J., Nov. 8, 2018).
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

# STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Orange Unit | CIVIL DIVISION<br>Docket No. 211-12-17 Oecv |
| Town of Fairlee,<br>　　　Plaintiff<br><br>　　　v.<br><br>Forcier Aldrich & Associates,<br>Aldrich & Elliot, P.C.,<br>Engineering Ventures, Inc,<br>Paragon Construction, Inc.,<br>Keymont Construction, Inc.,<br>Newstress, Inc.,<br>　　　　Defendants | ENTRY ORDER |

## Factual and Procedural Background

Pending and ripe for decision before the court is a motion to dismiss filed by the Defendant Newstress, Inc. and efforts to amend the complaint, under the Town's Motions to Amend the Compliant filed by the Town of Fairlee on February 26, 2018 and October 22, 2018. (Technically the reply briefing period on the Town's second motion to amend has not run, but the court addresses the motion(s) to amend in this entry order for the reasons stated below). The court is not addressing the Engineering Venture's Inc.'s motion for summary judgment at this time as the reply brief filing period has not run as this order is being finalized.

This case involves the deterioration of the roof of a concrete municipal water storage tank in Fairlee, Vermont. The relevant procedural posture of the case is as follows. The Town of Fairlee (hereinafter "Town") filed this 13-count lawsuit against six defendants involved in various aspects of the design and construction of the water storage tank. The Town filed its Complaint on December 15, 2017. Defendant Newstress, Inc. (hereinafter "Newstress") moved to dismiss the products liability, breach of warranty, and Consumer Protection Act (CPA) claims against it on February 12, 2018. The Town moved to amend the Complaint on February 26, 2018 by adding a negligence cause of action against Newstress and on that date filed its Opposition to Newstress's Motion to Dismiss. Newstress replied to the Town's Opposition on March 21, 2018 and objected to the Town's Motion to Amend the Complaint. Although one set of Defendants[1] has stated its nonobjection to the Motion to Amend the Complaint[2], the motion is still opposed by the Newstress, the defendant as to whom the new proposed count is directed.

---

[1] Forcier Aldrich & Associates, Inc. and Aldrich & Elliott, P.C.

[2] It is unclear if this non-opposition was filed with respect to the Town's first or second motion to amend the complaint. Since the party to which the proposed amendments are offered (Newstress) objects to both motions to amend, they ae taken up on the merits.

As alleged in the Town's Complaint and relevant here, the Town is a municipality located in Orange County, Vermont. Defendant Keymont Construction, Inc. (hereinafter "Keymont") is a New Hampshire corporation located in Laconia, New Hampshire that does construction work in Vermont, which includes concrete construction work. Defendant Newstress is a New Hampshire corporation with a principal business office in Epson, New Hampshire. In 2003, the Town decided to embark on a building project which included the water storage tank that is the subject of this dispute. Defendant Paragon Construction, Inc. (hereinafter "Paragon") was the designated general contractor for the project by written agreement dated June 11, 2003. On or about that date, Defendant Forcier Aldrich & Associates, Inc. and its successor Aldrich & Elliott, P.C. (hereinafter "Aldrich") recommended that the Town adopt Change Order No. 1, which modified the design of the roof of the water storage tank from using cast-in-place concrete to using precast, hollow-core concrete planks and a topping layer of reinforced concrete that would go over the planks, with a resulting price reduction. Aldrich allegedly represented to the Town that the water storage tank would function for at least 75 years, even with modifications pursuant to Change Order No. 1, and the Town allegedly relied on this assertion when entering into the agreement with Paragon.

According to the Complaint, Paragon assumed responsibility for the construction of the water storage tank, but engaged subcontractors to perform certain aspects of the project. Paragon subcontracted with Keymont to construct the roof with the planks and slab. Keymont, in turn, submitted to Newstress, the plank manufacturer, certain material so that it could obtain shop drawings for the planks. Newstress submitted shop drawings and materials for the approval of the planks to Keymont, Paragon, Engineering Ventures, P.C. (hereinafter "Engineering Ventures") and Aldrich before manufacturing the planks. Ultimately, Newstress manufactured the planks that were used to construct the water storage tank, sold, and delivered them to Keymont, and Keymont constructed the water storage tank using the planks.

According to the Complaint, construction of the roof was completed by 2004. In or around 2014, however, the Town became aware of small cracks that appeared on the exterior part of the concrete roof of the water storage tank. On or about October 1, 2014, a civil engineer, Timothy Schaal of Schaal Engineering, P.C., inspected the water storage tank roof and concluded that the defects were not a structural concern at that time. During the summer of 2015, a dive team entered the water storage tank to perform a scheduled cleaning and observe the roof. The dive team observed that sections of concrete from the underside of the roof's planks had fallen into the water storage tank. On October 13, 2015, Mr. Schaal investigated the water storage tank a second time, this time in the presence of representatives from Aldrich and Newstress, and observed "extensive spalling" of the bottom of one plank, exposing the pre-stressed steel cables that run through the planks. The adjacent plank also showed significant cracks and sections of that plank had also started to spall. Minor to significant cracking was observed in six other planks and as a result, these planks were deemed likely to be compromised in the future. Mr. Schaal concluded that due to the planks' condition, the water storage tank roof had failed and that a permanent repair would be required to avoid total failure if the roof collapsed, which he stated would occur. The Complaint alleges that if the water storage roof had collapsed, the water storage tank would have been unusable and caused injury to the town, including the total cessation of functioning of the Town's water system and fire department.

The Town's Complaint alleges three causes of action against Newstress. Count 11 asserts a breach of warranty claim against Newstress, alleging that Defendant "expressly and/or impliedly" warranted that its planks were free of defects and were merchantable and fit for the purpose for which they were going to be used, and that as a result of the planks' failure,

2

Newstress is in breach of both express and implied warranties. Count 12 asserts a product liability claim against Newstress, alleging that the defective planks have caused, and will continue to cause, the Town to suffer serious harm. Count 13 asserts a CPA claim against Newstress, alleging that Newstress represented that the planks were acceptable and would function as intended for at least 75 years, that the Town was reasonable to rely on the representation, that the representations were false, and that the Town's reliance on the false representations caused, or contributed to the causes of, the water storage tank's roof failure and resulting damages.

## I.     Motion to Amend Complaint to Add Negligence Claim

As an initial matter, the Court will address the Town's Motions to Amend the Complaint. As noted, the Town seeks to amend the Complaint to add a negligence claim against Newstress (Count 14). In response, Newstress contends that the motion(s) to amend the Complaint are untimely, prejudicial, redundant, and fruitless.

The proposed second motion to amend the complaint is similar to the first motion to amend the complaint, but also reportedly adds certain additional allegations consistent with information learned in discovery. The proposed second amended complaint adds 14 new paragraph to the proposed 20 page, 192 Paragraph first amended complaint and revises other paragraphs. No "redlined" version of the recently filed proposed second amended complaint was provided, to assist the court in zeroing in on the additional factual allegations asserted after discovery. The Town's opposition to the proposed second amended complaint, essentially reiterating it opposition to the first amended complaint motion, was just received yesterday. Frankly, the court completed its analysis for this overdue opinion (and had this draft opinion ready to issue) before receiving (or making any painstaking review) of the proposed second amended complaint.

For the reasons discussed below, under this opinion the court is allowing a limited negligence claim to at least be pled, and provides guidance as to the pleading requirements for a negligence count to be pled. Rather than weigh in as to which version of a proposed amended complaint version should or should not be allowed vi-a-vis an alleged negligence count, as described below the court allows the Town to make an amended complaint filing consistent with the analysis and direction in this opinion (assuming the Town has grounds to assert a negligence claim under the principles stated in this opinion). The Town may decide whether to use its proposed Second Amended Complaint, or some other version of an amended complaint. (Given the delay in the court's issuance of this opinion, the court is not going to separately decide if the second proposed complaint should be

Before stating is analysis as to the general  request to amend the complaint to add a negligence count, the court turns to the second aspect of the proposed amend complaint. To the extent any amended complaint filing that the Town makes clarifies factual allegations (but does not add new causes of action), from information gleaned in discovery, the court would generally expect such factual allegation clarifications to be allowed in the process. Our rules allow for notice pleading. If the parties have any objections to specific factual allegations additions or clarifications that The Town may make when it presents its amended complaint consistent with this pleading, such objections may be filed within 14 days after the Town files its amended complaint consistent with this opinion.

3

In analyzing the motion to dismiss the the court has used the Complaint, and upon cursory review, does not believe the proposed second amended complaint's additional alleged factual additions or clarifications (if allowed) would materially change the court's analysis presented below - (beyond the proposed pleading containing some additional allegations the Town may wish to make, under the leave allowed by the court to make pleading amendments, consistent with the views expressed in this opinion, in presenting an amended complaint).

Leave to amend a pleading "shall be freely given when justice so requires." V.R.C.P. 15(a). Courts must liberally permit amendments to a party's pleadings in order to allow maximum opportunity for each claim to be decided on the merits and to enable a party to assert a claim that was overlooked or unknown at an earlier stage. *Lillicrap v. Martin*, 156 Vt. 165, 170 (1989). "When there is no prejudice to the objecting party, and when the proposed amendment is not obviously frivolous nor made as a dilatory maneuver in bad faith, it is an abuse of discretion to deny the motion [to amend]." *Bevins v. King*, 143 Vt. 252, 254-55 (1983). In rare cases, denial of leave to amend may be justified due to "(1) undue delay; (2) bad faith; (3) futility of amendment; and (4) prejudice to the opposing party." *Colby v. Umbrella, Inc*., 2008 VT 20, ¶ 4, 184 Vt. 1 (quoting *Perkins v. Windsor Hosp. Corp*., 142 Vt. 305, 313 (1982)).

In the Court's view, Newstress's claim of prejudice and delay are unavailing. It is unclear how the amendment to add a negligence claim would prejudice Newstress other than by the inconvenience of having to defend against the added claim. Newstress highlights the age of events underlying the claim and its role as a "one-time transaction." In the Court's view, these facts alone do not establish prejudice. The new proposed claim arises out of the same events and transactions as the other currently asserted claims as to which Newstress is already conducting its claim investigation and defenses. Additionally, the original motion to add the new count was filed within three months of the Complaint. The Court does not find undue delay.

Newstress also argues the futility test for motions to amend should prevent the Town from being allowed to amend its complaint to assert a negligence claim. Specifically, Newstress argues the economic loss doctrine clearly bars the negligence clams that the Town seeks to assert (under any version of a proposed amended complant). This futility argument warrants analysis.

Generally, the economic loss rule prohibits a negligence claim to damage to the property that is the subject of a contact. See *Gus' Catering, Inc. v. Menusoft Systems, Inc.,*171 Vt. 556 (2000). There, the plaintiff contended that the trial court erred in refusing to allow it to amend its complaint to include a negligence claim; it maintained that economic losses are recoverable where a defendant's negligent conduct causes physical damage to the computer system. *Id*. at 558. The plaintiff also argued that the defendant failed to perform the level of care expected of a competent computer service provider and breached the duty of care required of the profession or trade. *Id*. The Vermont Supreme Court rejected this basis for appeal, finding that the complaint itself stated only claims for "damages by virtue of loss of business profits and loss of customers, as well as loss of time in trying to correct the myriad of difficulties caused by the improper installation of the digital dining system." *Id*. The Vermont Supreme Court concluded its analysis by noting that the plaintiff failed to raise any allegation that the defendant physically damaged the computer system due to its negligence, or that the defendant had breached the duty expected of one in its profession or trade at the trial court level, and that as result, those arguments were not preserved for review. *Id*. at 559.

The Vermont Supreme Court has taken the view, that the economic loss doctrine bars a claim for damage to physical property that it the subject of a contract, applies even when the

4

claimant pursues the claim against parties with whom it does not have privity of contract, such as in this case. In *Long Trial House Condo. Ass'n v. Engelberth Const.*, *Inc.,* 2012 VT 80, 192 Vt. 322, a condominium association, of condominium owners who purchased their condominiums from a developer, sued the project contractor for repair costs stemming from faulty construction of the common areas, including (1) replacement of properly installed and undamaged building components, that had to be removed and replaced to access faulty components; and (2) costs incurred from water damage to interior walls and painted surfaces inside specific units. Characterizing these repair costs as the difference in market value between the units as built and as they should have been built", the *Long Trail* Court stated the remedy was one for "purely economic losses resulting from 'the reduced value or costs of repair . . . of construction defects sound[ing] in contract rather than tort.'" 2012 VT 80 at ¶ 11, quoting *Heath v. Palmer*, 2006 VT 125, ¶ 15, 181 Vt. 545.

In *Walsh v. Cluba*, 2015 VT 2, 198 Vt. 45 a property owner and landlord, who signed a commercial lease with an individual, attempted to sue the corporation later set up by that individual, who came to occupy the space with no separate contract with the owner, for negligent damage to the premises. The Court rejected the negligence claim, under the economic loss rule, citing *Long Trail*. The *Walsh* Court noted that even if the loss was characterized as physical damage to property that was the subject of the contract, the economic loss rule generally applied:

> The physical harm may be to property rather than persons, but injury to the product or property that is the subject of a contract is generally considered a disappointed economic expectation for which relief lies in contract rather than tort law. . . . . Thus, with respect to property damage, the economic-loss rule generally applies to bar tort claims when the alleged damage is to property that is the subject of a contract between the parties

2015 VT 2 at ¶ 28. Thus an Town negligence claim against Newstress would be subject to dismissal under the economic loss rule, unless an exception to the general principle applies. The court considers three exceptions that may apply.

## A. Damage to Other Property Exception

The Town has alleged negligent physical damage to its property other than the product or property Newstress provided (the plank system). The Town alleges in its Complaint that in or around 2014, it became aware of "small cracks that had developed on the exterior of the concrete roof of the WST [water storage tank]" and that in 2015, Mr. Schaal concluded that planks 7 and 8 were structurally compromised. Mr. Schaal also allegedly observed "a range of minor to significant cracking in the other six [p]lanks of the roof structure." Based on his investigation, he concluded that "the WST [water storage tank] roof had failed." Although the Complaint is not entirely clear in this regard, it may allege not only physical damage to the planks Newstress supplied, but damage to non-Newstress supplied components and the overall functionality and structure of the water storage tank as well.

The economic loss rule typically bars claims in tort for damages resulting from injury only to the property that is the subject of a contract, but where the property damaged is separate, an action in tort may stand. *Walsh v. Cluba*, 2015 VT 2, ¶ 28, 198 Vt. 453. ("'Negligence law does not generally recognize a duty to exercise reasonable care to avoid intangible economic loss to another unless one's conduct has inflicted some accompanying physical harm.' The physical harm may be <u>to property</u> rather than persons, but injury to the product or property that is the subject of a contract is generally considered a disappointed economic expectation for which

relief lies in contract rather than tort law.")(underlining added) (internal citations omitted). The *Walsh* Court noted cases from Arizona and Florida declining to apply the economic loss rule to bar tort actions where the alleged negligence of the party being sued damaged property other than that which was the subject of the sued party's contract.  See also *Paquette v. Deere and Co.*, 168 Vt. 258, 260 (1998)(noting in the product liability context, under the *Restatement (Second) of Torts*, Section 402A,  generally "all jurisdictions " have allowed recovery in strict product liability for physical damage to property other than the property itself).

To the extent the Town's negligence claim seeks damages for physical damage to "other property", it may proceed at this point, at the motion to dismiss stage.

The court notes that the conclusion whether the WST roof cracks may constitute "other property" is very much an open issue.   It is possible that, as Newstress argues in its Motion to Dismiss, any alleged injury, for the purposes of an action in tort and economic loss analysis, was only to the planks themselves and should not be considered an injury to separate property, even though the functionality of the water storage tank as a whole may have been affected.  See *East River S.S. Corp v. Transamerica Delaval, Inc*., 476 U.S. 858, 867-68(1986) ("Obviously, damage to a product itself has certain attributes of a products-liability claim. But the injury suffered—the failure of the product to function properly—is the essence of a warranty action, through which a contracting party can seek to recoup the benefit of its bargain."); *Restatement (Third) of Torts* § 21 (1998), comment e, ("When the product or system is deemed to be an integrated whole, courts treat such damage as harm to the product itself . . . A contrary holding would require a finding of property damage in virtually every case in which a product harms itself and would prevent contractual rules from serving their legitimate function in governing commercial transactions.")[3]. In *East River*, an admiralty action stemming from defective ship turbines, the U.S. Supreme Court declined to adopt the view that injury to a defective part, independent of damage to person or other property, could support an action in tort.  *Id*. at 870-71. If portions of the WTS structure, that were not supplied by Newstress, were damaged by the alleged defective planks, but the damaged roof portions and the planks were integrally related and constructed or installed at the same time –  Newstress's argument that the court should find this a case of  "integrated whole " damage to the product itself, may later prevail on the facts.

However, in deciding whether to deny a motion to amend a pleading filed early on in a case, on the "futility" element, the court believes it should be lenient to allow an amended pleading that may state the elements of a cause of action the party moving to amend has asserted. When viewing even accepted pleadings at the motion to dismiss stage, the court is to deny motions to dismiss unless "it appears beyond doubt that there exists no facts or circumstances that would entitle the plaintiff to relief".  *Davis v. American Legion, Dept. of Vermont*, 2014 VT 134, ¶ 12; see discussion infra at Section II.

Thus the court will allow the motion to amend the complaint to include a negligence count.  Whether there was damage to property "other than the product" for purposes of applying

---

[3] The Vermont Supreme Court has not wholeheartedly adopted the *Restatement (Third) of Torts* in all its parts, put does look to that *Restatement* as a guide in fashioning the law. See example *Langolois v. Town of Proctor*,  2014 VT 130,  ¶¶'s 34 – 35 (analyzing *Restatement (Third) of Torts* as to its sections on apportionment of liability, and  applying it to the case before it  while expressly "mak[ing] no determination  here whether the Third Restatement position should be adopted in all cases."

the economic loss rule, can be re-asserted on summary judgment when the facts are better adduced.

As the court is allowing the motion to amend the complaint to add a negligence count, the court considers two other economic loss exceptions that may apply even where the physical damage is *to the property which itself* was the topic of the sued party's contract.

### B. The "Accident/ Imminent Harm" Exception

Notwithstanding *East River*, the Vermont Supreme Court has explicitly left open the possibility of recovery in tort damages resulting from physical harm where the injury occurs only to a defective product itself. *Paquette v. Deere and Co.*, 168 Vt. 258, 263 (1998). The *Paquette* Court suggested an exception may apply in cases where injury to the defective product that is the subject of an agreement occurs in the context of a dangerous situation such as an accident. *Id*. at 261.

The "accident" exception to the economic loss doctrine was clarified by the *Long Trail* Court. In *Long Trail*, the condominium project owners contended the economic loss doctrine did not apply to their claims for the defective condo project components that created an unreasonable risk of harm to person or property, citing *Council of Co–Owners Atlantis Condominium, Inc. v. Whiting–Turner Contracting Co.,* 308 Md. 18, 517 A.2d 336, 341–42 (1986). 2012 VT 80, ¶¶ 24- 28. In *Atlantis Condominium,* the plaintiffs alleged that certain latent construction defects created a fire hazard that presented a threat to the owners' and occupants' safety and to their personal and real property. The *Long Trail* Court rejected this approach as inconsistent with basic negligence principles and the Vermont economic loss doctrine, which "require[s] actual injury, not simply risk of harm" before negligent recovery is allowed. Id, ¶ 26. The *Long Trail* Court cited to the portion of its *Paquette* decision that noted, "[i]f we were to allow recovery for purely economic losses in products liability actions absent any physical harm based solely on claims that an alleged defect *could have endangered* persons or their property, warranty law would, in effect, be subsumed into tort law." *Id*, quoting *Paquette,* 168 Vt. At 264 (emphasis added by *Long Trail* Court).

If the WST is viewed as a <u>single product</u>, under the Complaint there has been no alleged actual injury to other property an persons, and the "accident/ imminent threat" exception to the economic doctrine does not apply.

### C. The "Professional Services" exception

A plaintiff may defeat the rule's bar on the recovery of tort damages if it can show that the "professional services" exception applies. See *Long Trail House Condo. Ass'n v. Engelberth Const., Inc.,* 2012 VT 80, 192 Vt. 322. In *Long Trail,* the Court analyzed the economic loss rule and found that it precluded the plaintiff's claim in tort, despite the absence of privity between the plaintiff and defendant, because the relationship did not fall within the professional services exception. *Id*. ¶ 13 (citing *EBWS, LLC v. Britly Corp.*, 2007 VT 37, ¶ 30, 181 Vt. 513). For the exception to apply, the parties must have a "special relationship, which creates a duty of care independent of contract obligations" and that the "key is not whether one is licensed in a particular field" but rather "the determining factor is the type of relationship created between the parties." *Id*. ¶ 13. Because contractors do not owe a special duty of care outside of their contractual obligations, the Vermont Supreme Court held that the professional services exception

was inapplicable. *Id.* ¶ 19. (Citing *EBWS*'s holding that designing and building a creamery was *not* a "professional service akin to architecture" such that the professional services exception should apply).

The Court notes that while the federal court for the District of Vermont has recognized and applied the professional services exception, the Vermont Supreme Court, while recognizing the exception, has not applied it in any particular case. See *Associated Electric & Gas Insurance Services Limited v. Electric Power Systems, Inc.*, No. 5:14–cv–68, 20,14 WL 12717669, *8 (D. Vt. December 23, 2014) (finding "no case in which the Vermont Supreme Court has actually found the exception to apply."). The court in *Associated Electric* synthesized Vermont Supreme Court precedent to formulate the circumstances in which the exception may apply – i.e., in the case of "an engineer, an architect or other professional" rendering a service. *Id.* (citing *Long Trail House*, 2012 VT 80, ¶ 22). The federal court found that because it was reasonable to conclude that some of the defendant's services were "engineering services," the professional services exception was applicable there and partial judgment on the pleadings for the defendant was therefore inappropriate. *Id.*

Here, while the Town does not specifically allege a special relationship that would support the application of the professional services exception, the Complaint does contain facts that might persuade the Court to conclude that the exception applies. For example, the Complaint alleges that "Newstress submitted shop drawings and materials for the approval of the [p]lanks to Keymont, Paragon, EV, and Aldrich before manufacturing" and that "Newstress manufactured the [p]lanks that were used to construct the roof of the [water storage tank], and sold and delivered them to Keymont." However, in its Opposition to Newstress's Motion to Dismiss filed contemporaneously with its request to amend its Complaint, the Town asserts that it had a "special relationship" with Newstress without providing much by way of explanation.

As above, in deciding whether to deny a motion to amend a pleading filed early on in a case, on the "futility" element, the court believes it should be lenient to allow an amended pleading that may state the elements of a cause of action the party moving to amend has asserted. When viewing even accepted pleadings at the motion to dismiss stage, the court is to deny motions to dismiss unless "it appears beyond doubt that there exists no facts or circumstances that would entitle the plaintiff to relief". *Davis* 2014 VT 134 at ¶ 12; see discussion *infra* at Section II.

The Town may amend its Complaint to include a description of any alleged special relationship that would support the application of the "professional services" exception to the economic loss rule. See *Wentworth v. Crawford and Co.*, 174 Vt. 118, 126 (2002) (dismissal proper when complaint did not state facts showing the existence of a special duty for the professional services exception to apply).

Although permission for such a pleading is allowed, the court expresses some doubt whether the facts will show Newstress had a specialized professional service relationship with the Town, rather than that of a mere construction subcontractor. See *EBWS*, 2007 VT 37, ¶ 37; *Long Trail House Condo Ass'n*, 2012 VT 80 at ¶¶'s 19-22. The issue can be re-asserted at the summary judgment motion phase if appropriate.

## II. The Pleading Standard: The Town's Breach of Warranty, Product Liability, and CPA Claims

The burden on plaintiffs under Vermont law is "exceedingly low" at the pleading stage. *Prive v. Vermont Asbestos Group*, 2010 VT 2, ¶ 14, 187 Vt. 280. Motions to dismiss for failure to state a claim are "disfavored and should be rarely granted." *Bock v. Gold*, 2008 VT 81, ¶ 4, 184 Vt. 575. Complaints are intended to give sufficient notice to the defendant to permit a response, but need not lay out every detail of the facts supporting the claim. *See Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 13, 184 Vt. 1 ("The Complaint is a bare bones statement that merely provides the defendant with notice of the claims against it."). As the Vermont Supreme Court has observed, the goal is to "strike a fair balance, at the early stages of litigation, between encouraging valid, but as yet underdeveloped causes of action and discouraging baseless or legally insufficient ones." *Id.*

The Court notes that the U.S. Supreme Court has rejected the federal standard on which *Colby* was based in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562-63 (2007). Instead, *Twombly* speaks of pleading sufficient facts to make the plaintiff's claims not just possible, but "plausible." *Id.* at 556, 570. The *Twombly* standard, the U.S. Supreme Court later explained, is "not akin to a 'probability requirement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, the Vermont Supreme Court has expressly rejected the heightened federal pleading standard as articulated in *Twombly* and *Iqbal*. See *Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 5 n.1, 184 Vt. 1 ("[W]e … are in no way bound by federal jurisprudence in interpreting our state pleading rules. We recently reaffirmed our minimal notice pleading standard … and are unpersuaded by the dissent's argument that we should now abandon it for a heightened standard.") (citations omitted); *Bock v. Gold*, 2008 VT 81, ¶5 n.*, 184 Vt. 575 ("As we noted recently, our dissenting colleagues' reliance on [*Twombly*] is misplaced.")

Accordingly, this Court will address Newstress's motions under Vermont's traditional and well-recognized pleading standard: whether "it appears beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." *Davis v. American Legion, Dept. of Vermont*, 2014 VT 134, ¶ 12 (quoting *Alger v. Dep't of Labor & Indus.*, 2006 VT 115, ¶ 12, 181 Vt. 309); see also *Prive v. Vermont Asbestos Grp.*, 2010 VT 2, ¶ 15, 187 Vt. 280 (the rule in this state is that when plaintiffs have not yet had an "opportunity to develop the case" through discovery, all that is required is a short and plain statement of the claim.) (internal quotation omitted). The court must take factual allegations in the Complaint—though not legal conclusions—as true and determine whether such facts could prove the Town's case. *Dernier v. Mortgage Network, Inc.*, 2013 VT 96, ¶ 23, 195 Vt. 113. ("We assume that all factual allegations pleaded in the Complaint are true, accept as true all reasonable inferences that may be derived from plaintiff's pleadings, and assume that all contravening assertions in defendant's pleadings are false."). The Court will apply this standard to the Town's breach of warranty, product liability, and CPA claims in turn.

## III. Breach of Warranty

In its Complaint, the Town asserts a breach of warranty claim against Newstress, alleging that it "expressly and/or impliedly" warranted that its planks were free of defects and were merchantable and fit for the purpose for which they were going to be used, and that as a result of the planks' failure, Newstress breached both express and implied warranties.

In its Motion to Dismiss, Newstress asserts that the Town's claim of breach of warranty is time-barred by the four-year statute of limitations imposed by the Vermont Uniform Commercial Code (UCC), 9A V.S.A. § 2-725(1); that the Town has not alleged an actionable warranty running to it from Newstress because it made no warranty, express or implied, directly to the Town; that the absence of privity between it and the Town precludes any claim of breach of implied warranty; and that the Town is not a third-party beneficiary of the sales contract between Newstress and Keymont.

In its Opposition to the Motion to Dismiss, the Town asserts that it was a third-party beneficiary to Newstress's contract with Keymont; that the 4-year UCC statute of limitations does not pose any bar to its UCC warranty claims because Newstress's warranty pertained to future performance covering a latent defect; that public policy requires an implied warranty between Newstress and the Town that the planks would be designed and manufactured properly because small towns and local governments often lack bargaining expertise and must rely on the representations of contractors, subcontractors, and manufacturers when deciding how to proceed with a project to benefit the public.

## A. The Statute of Limitations

Transactions for the sale "goods" are governed by Vermont's UCC. 9A V.S.A. § 2-107. "Goods" are defined, in relevant part, as "all things (including specifically manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (article 8) and things in action." The UCC imposes a four-year statute of limitations for claims arising under the code and defines accrual of a cause of action as "when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." 9A V.S.A. § 2-725(a). A breach of warranty occurs "when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." 9A V.S.A. § 2-275(b). The Vermont Supreme Court has found that a breach of warranty action under the UCC "accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach," and when "tender of delivery is made." *Gus' Catering, Inc. v. Menusoft Systems*, 171 Vt. 556, 557 (2000) (citing *Paquette v. Deere & Co.*, 168 Vt. 258, 260 (1998)). However, a party may toll the four-year statute of limitations if it can show that an opposing party subsequently modified an agreement by providing additional warranties of performance. *Id*. at 558.

In contrast, the statute of limitations for common law contract claims is six years measured from the time the cause of action accrues. 12 V.S.A. § 511. Under a common law theory, a cause of action accrues upon "discovery of facts constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery." *Union Sch. Dist. No. 20 v. Lench*, 134 Vt. 424, 427 (1976) (quotation omitted); See also *Univ. of Vt. v. W.R. Grace & Co.*, 152 Vt. 287, 290 (1989) (holding that discovery rule applies to 12 V.S.A. § 511). At that point, the limitation period begins to run, and the plaintiff is ultimately chargeable with notice of all the facts that could have been obtained by the exercise of reasonable diligence in prosecuting the inquiry. *Agency of Nat. Res. v. Towns*, 168 Vt. 449, 452 (1998).

Accordingly, the applicable statute of limitations with respect to the Town's breach of warranty claim depends on how the transaction for the sale of the planks is construed. Where a transaction involves elements of both sales and service, the question of which limitation of time

applies -- the four-year UCC, or six-year common law statute -- hinges on whether the transaction "predominantly," or essentially, relates to sales or services. *Openaire, Inc. v. L.K. Rossi Corp.*, 2007 VT 120, ¶¶ 13-15, 182 Vt. 636, 726 (holding that a contract to design, manufacture, truck, and install precast concrete panels was predominantly a contract for services and not subject to the UCC's four-year statute of limitations). Where the purchase and sale of component materials are necessary to a project, but incidental to the overall objective of "designing, engineering, and erecting [the final product]," a transaction will be construed as predominantly for services and the six-year statute of limitations pursuant to 12 V.S.A. § 511 will apply. *Lamell Lumber Corp. v. Newstress Int'l, Inc*., 2007 VT 83, ¶ 15, 182 Vt. 282 (citing *Lincoln Pulp & Paper Co. v. Dravo Corp*., 436 F.Supp. 262, 275 (D.Me.1977) (contract calling for sale, engineering and construction of heat recovery unit was not subject to UCC); *Care Display, Inc. v. Didde–Glaser, Inc.*, 225 Kan. 232, 589 P.2d 599, 605 (1979) (contract calling for sale, construction, and design of trade show exhibit was "principally for the rendition of services"); *Smith v. Urethane Installations, Inc*., 492 A.2d 1266, 1268–69 (Me.1985) (concluding that the "predominant feature" of a contract that provided for defendant to supply and install insulation was the provision of a service); *DeGroft v. Lancaster Silo, Inc.*, 527 A.2d 1316, 1323 (Md. App. 1987) (contract calling for sale of materials and construction of grain silo "predominantly concerned the rendition of services"); *Texas Dev. Co. v. Exxon Mobil Corp*., 119 S.W.3d 875, 881–82 (Tex.App.2003) (holding that "essence" of contract for "design, fabrication, and installation" of oil rig modifications was for service, not sale of goods) (quotations omitted)).

The Town's Complaint states that the roof was completed in 2004, the defects were first discovered in 2014, with an initial investigation occurring that year and a subsequent investigation occurring the following year. The Complaint was filed on December 15, 2017. If the UCC four-year statute of limitations were to apply, the Town's claim would be time-barred. However, in its Complaint, the Town alleges that Newstress "submitted shop drawings and materials," that it "manufactured the [p]lanks that were used to construct the roof" and that it "sold and delivered them to Keymont." Applying the deferential *Davis* motion to dismiss standard, namely whether it "appears beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief ", the court finds that the Town's pleadings thus raise a question of fact as to whether the disputed agreement was predominantly for sales or service. The court cannot determine, based solely on the Complaint, whether the transaction consisted predominantly of sales or services and for this reason dismissal of the Town's breach of warranty claim is inappropriate at the pleading stage.

## B. Express and Implied Warranties

1. *Express Warranties*

As noted, the Town's Complaint alleges that Newstress made "express and/or implied warranties" about its planks. In its Motion to Dismiss, Newstress alleges that the Town has no actionable breach of warranty claim because it fails to allege that Newstress made any warranties to the Town directly, apart from Aldrich's alleged warranty that the water storage tank would function for "at least 75 years" when deciding to undertake the project and entering into the Paragon contract. 9A V.S.A. § 2-313 provides that an express warranty may be created by:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise. (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that

the goods shall conform to the description. (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

The Town's Complaint alleges clearly that Newstress created shop drawings on which the planks were based and that certain representations were made to the Town about the appropriateness of the planks. Under the plain language of the UCC, the Town has adequately pleaded breach of an express warranty. See 9A V.S.A. § 2-313, Editor's Notes, which state that "technical specifications, blueprints and the like can afford more exact description than mere language and if made part of the basis of the bargain goods must conform with them." See also *Omega Engineering, Inc. v. Eastman Kodak Co.*, 30 F.Supp.2d 226 (D.Conn. 1998) (sanctioning the finding of an express warranty on the basis of "[t]echnical specifications " and "blueprints," as authorized under Connecticut law.). Taking all allegations in the Complaint as the Court must at the pleading stage, it finds the Town has adequately pleaded its breach of express warranty claim.

As noted above, even if Newstess's contract is deemed to be one for goods only, as to the alleged warranty for future performance, there is an exception to the four-year 9A V.S.A. § 2-725 statute of limitations, for any express warranties of future performance.

The Town asserts that the absence of privity between it and Newstress bars a claim for express warranty. Although generally express warranties are made from the seller to the buyer, the official comment to section 2–313 recognizes that in certain cases privity of contract is not necessary between the plaintiff and defendant to establish a claim for breach of express warranty:

> Although this section is limited in its scope and direct purpose to warranties made by the seller to the buyer as part of a contract for sale, the warranty sections of [Article 2] are not designed in any way to disturb those lines of case law growth which have recognized that warranties need not be confined either to sales contracts or to the direct parties to such a contract.

*Id.* official cmt. 2. According to the comment, among the circumstances in which contractual privity is not required are (1) bailments for hire, and (2) situations covered by section 2–318 of the Vermont U.C.C., which provides that a seller's warranty extends to any natural person reasonably expected to use, consume or be affected by the goods, if the person is personally injured by breach of the warranty. *See* Vt.Stat.Ann. tit. 9A, § 2–318. Beyond these two circumstances, however, "the matter is left to the case law with the intention that the policies of this Act may offer useful guidance in dealing with further cases as they arise." Vt.Stat.Ann. tit. 9A, § 2–313 official cmt. 2.

In *Gouchey v. Bombardier, Inc.*, 153 Vt. 607 (1990), a remote snowmobile purchaser was allowed to revoke its acceptance of a snowmobile and proceed against the manufacturer or the snowmobile for breach of express warranty. While strictly speaking, *Gochey* involved a claim for breach of express warranty under the Magnuson–Moss Warranty Act, 15 U.S.C. §§ 2301–2312 (1994), in that case the Vermont Supreme Court expressed its agreement with the rationale that "when a manufacturer expressly warrants its goods, it, in effect, creates a direct contract with the ultimate buyer". 153 Vt. At 613. It appears to the court here that while the Vermont Supreme Court has not expressly stated that privity is required for a non-natural person purchaser to enforce an express warranty, it has not ruled out such a claim where privity does not exist. Because there may exist facts or circumstances which would allow for recovery, under *Davis,* a motion to dismiss

12

should not be granted as to the express warranty claim.

*2. Implied Warranty*

The Town also asserts a breach of implied warranty claim in its Complaint. 9A, § 2-314 provides that: "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind" and that "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose."

As an initial matter the court notes that if the Newstress contract is deemed to be predominantly one for goods, the implied warranty claim will be subject to dismissal under the UCC statute of limitations, even if the UCC were to allow an implied warranty claim to be asserted by a party not in privity with the product seller.

If the Newstress contract is one predominantly for services, it is dubious that a breach of implied warranty may be found to exist between the Town and Newstress. Outside of UCC goods contracts, implied warranties may be found in areas such as implied warranties of habitability for landlords (*Hilder v. St. Peter*, 144 Vt. 150 (1984)) or the implied warranties against structural defects and/or habitability in the sale of residential housing. (*Heath v. Palmer*, 2006 VT 125, 181 Vt. 545). The court cannot find recognition of a general implied warranty in the provision of services, not covered by the UCC.

Nor will the court infer application of the UCC implied warranties, applicable to goods, to Newstress' contract if that contact is deemed to be one predominantly for services. In *Investment Properties, Inc. v. Lyttle*, 169 Vt. 487 (1999), a condominium contractor, hired by the developer, sued the architect, who was directly hired by the developer, for alleged implied warranties associated with the architect's services as to specification of material for concrete floors that proved defective. The contractor settled a defective floor claim with the unit owners, and obtained an assignment of the unit owner's claims against the architect. The trial court dismissed the contractor's claim to pursue implied warranty claims, finding no implied warranties arose from the architect's provisions of service, rather than goods, and because there was no contract between the architect and the contractor or unit owners. 169 Vt. at 494-95.

On appeal the contractor argued the trial court erred because it should have recognized a warranty of fitness implied-by-law in the architect service contract, akin to the implied warranty of fitness for a particular purpose under the UCC's 9A V.S.C. section 2-318, and noted a South Carolina case that recognized an implied warranty of habitability as to an architect and property owners with whom it lacked privity. 169 Vt. at 495, citing *Beachwalk Villas Condominium Ass'n, Inc, v. Martin,* 406 S.E.2d. 372, 374 (S.C. 1991). The *Investment Properties* Court concluded that the UCC statutory provisions do not apply to the provision of architectural design services. 169 Vt. at 495-96.

The court finds no law to support a claim for implied breach of warranty for the provision of services where the parties are not in privity, for a non residential construction contract. Although the South Carolina *Beachwalk* case, cited in *Investment Properties*, recognized an implied warranty for an architect, it did so in the context of implied habitability of workmanship of residential property, an area of commonly accepted non-UCC implied warranty responsibility.

13

## IV.     The Town's Status as a Third-Party Beneficiary

The Town has alleged in its Complaint that Newstress and Keymont entered into a contract to benefit the Town by constructing the planks to meet custom specifications for the specific purpose of forming the structural basis of the Town's roof and that the Town was a third-party beneficiary to the contract between Newstress and Keymont. In its Motion to Dismiss, Newstress contends that the Town has failed to adequately plead its status as a third-party beneficiary.

Whether or not a party is a third-party beneficiary, as opposed to an incidental beneficiary, is based on the intention of the contracting parties. *Morrisville Lumber Co., Inc. v. Okcuoglu*, 148 Vt. 180, 184 (1987) (citing *Broadway Maintenance Corp. v. Rutgers*, 90 N.J. 253, 259–60, 447 A.2d 906, 909 (1982)). Accordingly, a party must present evidence to show its status as an intended third-party beneficiary. *Hemond v. Frontier Communications of America, Inc.*, 2015 VT 67, ¶ 20, 199 Vt. 272. The agreement must explicitly contemplate conferring a benefit on the third party. *Id*. Because this inquiry requires further factual development, disposition of the issue is inappropriate at the pleading stage and the Court will permit the Town to proceed with its claim that it was a third-party beneficiary to the agreement between Newstress and Keymont.

## V.     Product Liability

Product liability imposes liability upon a seller engaged in the business of selling a product, which reaches a user without undergoing substantial change, for physical harm or property damage to a user or consumer resulting from a defective condition, unreasonably dangerous, in the product sold. *Kinney v. Goodyear Tire & Rubber Co*., 134 Vt. 571, 574 (1976). The absence of negligence or a contractual relationship does not bar liability. *Id*. As the Vermont Supreme Court noted in *Webb v. Navistar Intern, Tranport. Corp*., 166 Vt. 119, 126 (1996) under strict product lability, a "manufacturer is strictly liable for physical harm or property damages resulting from a defective product that reaches a user without undergoing substantial change". (emphasis added). Thus an action for product liability does not require privity, and can extend to property damage.

In its Complaint, the Town alleges that Newstress manufactured and sold the planks, that the planks were delivered and installed without undergoing substantial change in their condition, that they were defective when delivered by Newstress, and that their defect caused the water storage tank roof's failure. In its Motion to Dismiss, Newstress claims that that the economic loss rule precludes recovery for any damages to the water storage tank itself, and that Newstress's planks were changed after delivery, thus defeating the Town's product liability claim.

Turning to the economic loss doctrine issue, in *Paquette v. Deere and Co.*, 168 Vt. 258, 260 (1998), the Vermont Supreme Court recognized that jurisdictions generally allow product liability claims involving claims to physical damage to property other than the dangerous product itself. As this court has determined fact issues as to the negligence claim (as to whether there was physical damage to property "other than" the product itself), this aspect of the product liability claim may be viable and proceed.

Although in *Mainline Tractor & Equipment Co., Inc. v. Nutrite Corp.* 937 F.Supp. 1095 (D.Vt. 1996), preceding *Paquette,* the federal district court, addressing the contours of product liability claims and the economic loss doctrine, indicated public protection and the parties' bargaining power may in some circumstances be relevant to the economic loss inquiry for damages to the product itself,– the *Paquette* Court rejected this view two years later insofar as the economic loss rule goes. *Paquette*, 168 Vt. at 264:

> Nor are we persuaded that, simply because this case involves a consumer transaction, any type of damages alleged, regardless of whether they involve physical harm, can support a products liability action. The distinction between consumer and commercial transactions does not further the safety rationale behind the doctrine of strict products liability.

Thus, the extent the WST damage in this case may be later viewed as damage to the product itself, the court refers to its analysis under the "negligence" section of this opinion. If the WST is viewed as a single product, under the Complaint there has been no alleged actual injury to other property and persons, and the "accident/ imminent threat" exception to the economic doctrine does not apply, and the product liability claim is barred by the economic loss doctrine.

The court acknowledges that Newstress contends that the product liability claim fails as the planks were substantially changed after their delivery. The court finds that this inquiry is fact specific, and that not all changes to a product support the "substantially changed" product liability claim defense. (see *Restatement* Sectiuon 402A comment p, and cases cited at Page 8 of the Town's 2/26/18 motion opposition memo, which authorities are not restated here). The "substantially changed" issue is another example of an issue best resolved at the summary judgment phase rather than under the motion to dismiss "appears beyond doubt that there exists no facts or circumstances that would entitle the plaintiff to relief" *Davis* standard.


## VI.     <u>Consumer Protection Act</u>

In its Complaint, the Town alleges that Newstress violated the CPA through its representations concerning the sale of the planks to be used in the water storage tank. In its Motion to Dismiss, Newstress contends that the Complaint fails to set forth a cause of action pursuant to the CPA because Newstress made no direct representations to the Town and because the transaction did not occur in the consumer marketplace.

To establish a "deceptive act or practice" under the Act requires three elements: (1) there must be a representation, omission, or practice likely to mislead consumers; (2) the consumer must be interpreting the message reasonably under the circumstances; and (3) the misleading effects must be material, that is, likely to affect the consumer's conduct or decision regarding the product. *Carter v. Gugliuzzi*, 168 Vt. 48, 56 (1998). Deception is measured by an objective standard, looking to whether the representation or omission had the "capacity or tendency to deceive" a reasonable consumer; actual injury need not be shown. *Id*. (citation omitted). To be reasonable, moreover, the consumer's understanding need not be the *only* one possible. *Id*. Materiality is also generally measured by an objective standard based on what a reasonable person would regard as important in making a decision, but may include a subjective test where the seller knows the consumer may be uniquely susceptible to an omission or misrepresentation. *Id*.

15

The Town alleges that "Defendant Newstress represented that their [p]lanks were an acceptable component for the [water storage tank's] roof and would function as intended for at least 75 years," that the Town was reasonable to rely on [Newstress's representations]" and that Newstress's false representations "caused or alternatively contributed to the causes of the [water storage tank's] roof failure and resulting damages." It has, therefore, stated the elements of a claim under the CPA. However, the Court believes it necessary to address additional standing questions and transactional requirements under the CPA.

The purpose of Vermont's CPA is to "complement the enforcement of federal statutes and decisions governing unfair methods of competition, unfair or deceptive acts or practices, and anti-competitive practices in order to protect the public and to encourage fair and honest competition." 9 V.S.A. § 2451. The CPA prohibits, among other conduct, "unfair or deceptive acts or practices in commerce." 9 V.S.A. § 2453. The section entitled "Civil penalty," provides that any:

> "consumer who contracts for goods or services in reliance upon false or fraudulent representations or practices prohibited by section 2453 of this title, or who sustains damages or injury as a result of any false or fraudulent representations or practices prohibited by section 2453 of this title, or prohibited by any rule or regulation made pursuant to section 2453 of this title may sue for appropriate equitable relief and may sue and recover from the seller, solicitor, or other violator the amount of his or her damages, or the consideration or the value of the consideration given by the consumer, reasonable attorney's fees, and exemplary damages not exceeding three times the value of the consideration given by the consumer."

9 V.S.A. § 2461.

For the purpose of the CPA's provisions, the term "consumer" means: "a person who purchases, leases, contracts for, or otherwise agrees to pay consideration for goods or services not for resale in the ordinary course of his or her trade or business but for the use or benefit of his or her business or in connection with the operation of his or her business." 9 V.S.A. § 2451a(a). Vermont's general construction statute defines "person" as "any natural person, corporation, municipality, the State of Vermont or any department, agency, or subdivision of the State, and any partnership, unincorporated association, or other legal entity." 1 V.S.A. § 128. Finally, within the context of the CPA, the term "goods" or "services" are defined to include "any objects, wares, goods, commodities, work, labor, intangibles, courses of instruction or training, securities, bonds, debentures, stocks, real estate, or other property or services of any kind. The term also includes bottled liquified petroleum (LP or propane) gas." 9 V.S.A. § 2451a(b).

By the plain terms of the CPA, the Town, a municipality, has stated a claim under the civil penalty provision as a "consumer" alleging unfair and deceptive acts or practices against Newstress as a "seller, solicitor, or other violator." See 9 V.S.A. § 2461. Also clear from the plain terms of the CPA is that its scope extends to business transactions involving goods and services, as long as the bargained for goods or services are not for resale.

The court notes that as the CPA is "remedial in nature," liberal construction of its terms is required to afford and furnish its remedies and purposes. *Elkins v. Microsoft Corp.*, 174 Vt. 328, 331 (2002) (citing *State v. Custom Pools*, 150 Vt. 533, 536 (1988); *Carter v. Gugliuzzi*, 168 Vt. 48, 52 (1998); *State v. Therrien,* 161 Vt. 26, 31(1993)). In accordance with this principle, Vermont has long recognized that the CPA (formerly, the Consumer Fraud Act) applies to

business transactions and that corporate entities may be "consumer[s]" for the purpose of the law. See *Rathe Salvage, Inc. v. R. Brown § Sons, Inc*., 2012 VT 18, 191 Vt. 284; *Ascension Technology Corp. v. McDonald Investments, Inc*. 327 F.Supp.2d 271, 276 (D.Vt. 2003) (denying defendant's motion to dismiss for failure to state a claim on the basis of the plaintiff's corporate status and citing to Vermont's general construction of the term "person" to encompass a corporation).

The Town must also be able to show that Newstress is a "seller, solicitor, or other violator" in order to sustain its CPA claim under the civil penalty provision. See 9 V.S.A. § 2461. As the Vermont Supreme Court observed in *Elkins v. Microsoft, Inc*., 9 V.S.A. § 2461(b)'s reference to "other violator" removes any privity requirement between the plaintiff seeking a private right of action against a defendant under Vermont's consumer protection statute. *Id*. at 331. In *Elkins*, a consumer class action, the plaintiff sued under Vermont's consumer protection statute alleging that Microsoft used its monopoly power to overprice the pre-installed Windows 98 operating system on a computer purchased from a computer manufacturer. *Id*. at 329. The trial court dismissed the action because the plaintiff was an indirect purchaser (i.e., there was no privity between Windows and the plaintiff). *Id*. On appeal, the Vermont Supreme Court ruled that indirect consumers have standing under Vermont's consumer protection statute and that privity is not required. *Id*. at 331. ("The Act expressly states that *any* consumer, reinforced by the definition of consumer as '*any* person,' who suffers injury may bring an action under the statute against a 'seller, solicitor or *other violator*.' The language does not support the imposition of a privity requirement.").

As the Vermont Supreme Court observed in *Sawyer v. Robinson*, 2006 Vt. 136, 223, 181 Vt. 216, the terms "solicitor" or "other violator" are difficult to define in the absence of legislative guidance. In the absence of such guidance, the *Sawyer* court concluded that the terms "solicitor" and "other violator" would be construed according to their plain meaning. *Id*. ¶ 12. Under this approach, the Vermont Supreme Court reasoned, the term "other violator" is a broad term encompassing defendants that are not "sellers" of "goods or services" as Vermont's consumer protection statute defines those terms. *Id*. (citing *Elkins*, 174 Vt. 328, at 331-32). The question of whether a defendant is an "other violator" under Vermont's consumer protection statute, therefore, depends on the nature of the defendant's alleged activities independent of any statutorily defined category. *Id*. ¶ 13. Under the broad construction sanctioned there, the *Sawyer* Court determined that landlords are permissible defendants under the law. *Id*. ¶ 13.

Vermont's trial court decisions provide additional guidance about the construction of the terms "solicitor" and "other violator" in the CPA. Not every remote consumer has standing to sue under the CPA. Although contractual privity is not required to assert a CPA claim, at least one trial court decision has required a consumer plaintiff to have actually used or purchased the product, a fact that the Town has pleaded in is Complaint. See *Fucile v. VISA USA, Inc*., No. S1560-03 CNC, 2004 WL 3030037 (December 27, 2004) (Norton, J.) (declining to extend standing to named plaintiff consumer alleging a CPA violation where the defendant's requirement that merchants accept debit card services along with credit card services allegedly resulted in increased costs to the consumer – an assertion the Court found overly speculative). *Id*. at 3. Notably, in contrast, *Investor's Corp v. Bayer*, No. 1011-04 Cncv (June 1, 2005) (Norton, J.) held that standing under Vermont's consumer protection statute was appropriate for a class of rubber component consumers because, unlike the plaintiff consumer in *Fucile*, the rubber component was part of a product actually consumed by the consumer class. *Id*. at 3. The injury there was not too remote nor the damages too speculative. *Id*.

17

At this early stage, the Court believes that the Town's Complaint does not allege too remote an injury or damages too speculative to preclude a claim under the CPA. The Town ultimately used the planks manufactured and sold by Newstress. Accordingly, the Town may be able to show, with further factual development, that its relationship with Newstress is sufficient for the defendant to fall within the definition of "other violator" under the statute to support its CPA claim.

Newstress argues in its Motion to Dismiss that the Town has failed to allege the transaction occurred in the general consumer marketplace. *Foti Fuels Inc. v. Kurrle Corp.,* 2013 VT 111, 195 Vt. 524 addresses when a transaction occurs "in commerce" as required under Vermont's consumer protection statute. *Id.* ¶ 19. The Vermont Supreme Court held that the statute's requirement that a transaction occur "in commerce" meant that the transaction must occur "in the context of [an] ongoing business in which the defendant holds himself out to the public." *Id.* ¶ 21. Moreover, the "practice must have a potential harmful effect on the consuming public, and thus a breach of duty owed to consumers in general." *Id.* By contrast, transactions resulting from "private negotiations between two individual parties who have countervailing rights and liabilities established under common law principles of contract, tort, and property law" remain beyond the scope of the statute. *Id.* In explaining this distinction, the Vermont Supreme Court noted that statutory protection of consumers is paramount because of the uneven bargaining power among buyers and sellers and because common law remedies are frequently inadequate for the ordinary consumer due to litigation costs. *Id.* ¶ 23. In determining that the transaction at bar did not occur in the marketplace, the *Foti Fuels* Court examined several factors. First, it found that the fact the plaintiff held himself out *only* to the defendant buyer, as opposed to the public at large supported the private nature of the transaction. *Id.* Second, it found that because the transaction did not involve products, goods, or services purchased for general sale or consumption, but the sale of an entire business, it fell outside the scope of the CFA. *Id.* Third, it found that the transaction's high level of customization suggested that it occurred outside the consumer marketplace. *Id.* These factors resulted in the conclusion that common law remedies were more appropriate. *Id.*

Further factual development is required to determine the nature of Newstress's business operations in relation to public commerce and with respect to the transaction with the Town in particular. Given that Newstress regularly engages in the sale of its concrete planks to customers[4], and this was not an isolated buyer/seller transaction as in *Foti*, the *Foti* factors do not clearly establish a lack of the "in commerce" element in this case. Whether the *Foti* factors may militate in favor of finding that common law remedies are more appropriate here considering the nature of the transaction, but that determination cannot be made by examining the Town's Complaint alone. In sum, the application of *Foti* is inappropriate to defeat the Town's CPA claim at the motion to dismiss stage of the litigation.

## VII.    Order

For all of the above reasons, the Town's motion to amend its Complaint to include a negligence claim is GRANTED.

---

[4] Customers who are "consumers" under the CPA of course includes non-natural person entities.

Newstress's Motion to Dismiss as to all claims is GRANTED IN PART and DENIED IN PART.

To be clear:

a. The motion to dismiss the **negligence** claims is GRANTED except to the extent the Town my show damage to other property or the "professional services" exception, the motion is DENIED

b. The motion to dismiss the **express warranty** claim is DENIED, but the motion to dismiss the **implied warranty** claim is GRANTED.

c. The motion to dismiss the **third party beneficiary claim** is DENIED

d. The motion to dismiss the **strict product liability claim** is DENIED to the extent it seeks recovery for damage other than the product itself, and GRANTED to the extent it seeks recovery for damage to the product itself.

e. The motion to dismiss the **Consumer Protection Act claim** is DENIED.

Electronically signed on November 07, 2018 at 2:00 PM pursuant to V.R.E.F. 7(d).

_____
Michael J. Harris
Superior Court Judge